## No. 11,363.

### PUBLIC SERVICE COMPANY v. CITY OF LOVELAND.

Decided March 8, 1926.   Rehearing denied April 12, 1926.

Action by a city to condemn an electric lighting plant.
Decree for petitioner.

### *Affirmed.*

1. MUNICIPAL CORPORATIONS — *Lighting — Eminent Domain.* Cities and towns have the right of eminent domain to condemn for public purposes a lighting plant belonging to a private corporation.

2. CONSTITUTIONAL LAW — *Municipal Corporations — Lighting.* Chapter 153, S. L. '99, concerning gas, water and light for municipalities, is not unconstitutional by reason of the title of the act being defective, and it applies to plants acquired before, as well as after, its passage.

3. LEGISLATION—*Franchises—Constitutional Law.* The legislature is inhibited by the Constitution from making any irrevocable grant of special privileges, franchises or immunities.

4. MUNICIPAL CORPORATIONS—*Franchises—Condemnation.* Although an ordinance granting the right to a private corporation to operate a lighting plant in the city, by its terms fails to reserve the right to the city to purchase or condemn the plant, nevertheless, an existing statute to that effect will be read into and made a part of the ordinance.

5. *Lighting System—Condemnation—Vote.* No vote of the taxpayers of a city is necessary to authorize the condemnation of a lighting plant for public purposes, under existing statutes.

6. *Lighting—Franchise—Condemnation.* Where a city condemns a lighting plant of a private corporation, the local franchise of the latter is thereby terminated, and questions concerning the same become moot and will not be considered on review.

### 216

7. Appeal and Error—*Moot Questions.* The Supreme Court will not decide moot questions.

8. Municipal Corporations—*Lighting—Condemnation.* Where a city, for public purposes, condemns a lighting plant of a private corporation, it has to take only such portions of the system as its necessities require, reimbursing the corporation for damages to the residue.

9. *Condemnation—Disclaimer.* City authorities have no power to execute a disclaimer concerning the taking of private property for public use.

10. *Public Utilities—Condemnation.* In condemnation proceedings it is the province of the municipal authorities to determine what property shall be taken for public use, and their decision is conclusive unless fraudulent or unreasonable.

11. *Public Utilities—Condemnation—City Limits.* A Municipality may condemn for public use, private property which lies outside of the city limits.

12. *Condemnation.* A large discretion is vested in municipal authorities in determining what property is necessary for public use, in condemnation proceedings.

13. *Utilities—Condemnation—Funds.* Questions concerning the raising or disposition of funds by a municipality have no place in a proceeding to condemn private property for public use.

14. Eminent Domain—*Municipal Corporations—Instructions—Damages.* In an action by a city to condemn a lighting system for public use, it is held that the jury was correctly instructed, and all necessary elements of damage properly submitted and considered.

15. Public Utilities — *Improvements.* A public utilities corporation under the jurisdiction of the utilities commission, that makes extensions and improvements without the approval of the commission, must be the loser if they are found to be unprofitable. It will not be permitted to charge the loss to the public.

16. Appeal and Error—*Conflicting Evidence.* A verdict based on conflicting evidence will not be needlessly disturbed.

17. Eminent Domain—*Damages—Residue.* In eminent domain proceedings, damages to the remainder by what is done elsewhere than on the part of the property taken may not be considered.

18. *Award—Presumption.* Every presumption is in favor of an award in condemnation proceedings, and its invalidity must be shown by anyone asserting it, by clear and satisfactory evidence.

19. MUNICIPAL CORPORATIONS — *Lighting.* A transaction involving the acquisition of a large and expensive municipal lighting system will not be defeated because of minor obstacles.

*Error to the District Court of Larimer County, Hon. Claude C. Coffin, Judge.*

Mr. PAUL W. LEE, Mr. GEORGE H. SHAW, for plaintiff in error.

Mr. REID WILLIAMS, Messrs. PERSHING, NYE, TALL-MADGE & BOSWORTH, Mr. AB H. ROMANS, Mr. ROBERT H. DUNLAP, for defendant in error.

*En banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THE city of Loveland, in the exercise of the right of eminent domain, brought an action against the Public Service Company, a corporation, to condemn for public purposes an electric lighting plant belonging to the company. The city prevailed in the litigation. A jury assessed the price to be paid by the city to the company and the city paid the money into the registry of the court for the use of the company, pursuant to statute. The city was then permitted to take over the property and is now operating it. The company has brought the case here for review and alleges that many errors were committed by the district court.

Loveland is a city with a population exceeding 2,000 and less than 15,000. As such, for the purposes of organization and classification, it comes within the denomination of the statutes of cities of the second class. C. L. 1921, section 9005. It was an incorporated town when the ordinance hereafter mentioned was passed. Public Service Company of Colorado is a private corporation, engaged generally in the business of manufacturing and selling electricity for light, heat, and power purposes throughout different portions of the state.

In 1903, the town (now city) of Loveland passed an ordinance granting to the Loveland Light, Heat and Power Company, its successors and assigns, the right to construct, operate and maintain an electric lighting plant for the generation and distribution of electric current for power, heating and other purposes. The ordinance also gave rights of way through the streets and alleys of the town and the franchise so granted was for a period of twenty-five years. It was not submitted to a vote of the taxpayers for their approval.

Under the authority of the ordinance, an electric lighting plant was constructed, generating electricity by steam, but afterwards the steam generating plant was dismantled and the Loveland distributing system was then connected with a large central plant of Public Service Company located near the town of Lafayette, which central plant supplies other cities and towns and other customers of the company in the state. Thereupon the Loveland distributing system became a part of the central plant of the company and was thereafter supplied with electricity through a substation connected therewith and located in Loveland. This continued until the company was dispossessed by the condemnation proceedings brought by the city. The city sought to condemn only the Loveland distributing system and also means for supplying a few customers located adjacent to or in close proximity with the city. The city did not need all of the property of the company, particularly the substation or the real estate upon which it stood, and certain transmission lines, and so excluded them from the condemnation. Public Service Company succeeded to the rights granted under the above ordinance, and the company or its predecessor in interest above named operated under the franchise for over twenty years before the condemnation proceedings were commenced.

After the above occurrences, the city decided to operate a municipally owned electric plant, and to that end acquired water and power rights, built a hydro-electric

generating plant on the Big Thompson river, about eleven miles west of Loveland, and constructed therefrom on rights of way, lines for the transmission of electrical current to the city. The Big Thompson plant and the transmission lines therefrom to the city, added to the distributing system of the company covered by the condemnation, furnished the city with its own complete hydro-electric system, which it is now operating. The city got part of its money for these purposes by means of authorized bond issues, and obligated itself for the payment of further sums out of the income to be derived from its municipally owned plant. It made efforts to agree with the company to obtain the property sought, and as to the compensation to be paid, but was unsuccessful. Then the city brought this action.

The assignments of error raised by the company require the consideration of the following questions: (1) Right of city to condemn; (2) whether vote of taxpayers is necessary as condition precedent in condemnation by city; (3) whether the city is required to take the entire electrical plant, if it takes anything; (4) right of city to condemn property outside city limits for electric light works; (5) limitation of scope of inquiry in condemnation proceedings as to details of municipal finances; (6) damages and instructions to jury. We shall discuss the above matters in the order named.

1. As to the right of the city to condemn: Colorado Constitution, article II, section 15, makes provision for the taking of private property for public use, and the manner of ascertaining the compensation to be paid. The section reads as follows: "That private property shall not be taken or damaged, for public or private use, without just compensation. Such compensation shall be ascertained by a board of commissioners, of not less than three freeholders, or by a jury, when required by the owner of the property, in such manner as may be prescribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall

not be needlessly disturbed, or the proprietary rights of the owner therein divested; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public.''

It is further provided by Colorado Constitution, article XV, section 8, that, ''The right of eminent domain shall never be abridged nor so construed as to prevent the general assembly from taking the property and franchises of incorporated companies, and subjecting them to public use, the same as the property of individuals; and the police power of the state shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well being of the state.''

Article II, section 11 of our Constitution also has a bearing on the discussion which is to follow. It reads: ''That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges, franchises or immunities, shall be passed by the general assembly.''

With particular reference to cities and towns, the general assembly in 1899, enacted chapter 153, L. 1899, C. L. 1921, section 8987, subsections 67 and 70, in the following language:

''Sixty-seventh—The city council of cities and board of trustees of towns shall have power to purchase or erect water works, gas works, or electric light works; or to authorize the erection of the same by others; but no such works shall be erected or authorized until a majority of the voters of the city or town who are taxpayers under the law voting on the question at a general or special election, by vote approve the same. All such works hereafter so authorized by any city or town to

be erected by others or the franchise of which shall be extended or renewed, shall be authorized, extended or renewed upon the express condition that such municipality shall at any time have the right and power to purchase or condemn any such works at its actual cash value, and at a price excluding all value of the franchise or right of way through the streets, and also excluding any value by virtue of any contract for hydrant or private rental or otherwise entered into with the municipality in excess of the actual value of the works; *Provided,* That nothing herein shall authorize the condemnation of any such works within twenty years after their original erection or construction, except at periods of ten and fifteen years after granting the franchise therefor.''

\*    \*    \*

''Seventieth—Said cities or towns are hereby authorized to condemn and appropriate so much private property as shall be necessary for the construction and operation of said water, gas or electric light works in such manner as may be prescribed by law. Said cities or towns shall also have the power to condemn and appropriate any water, gas or electric light works not owned by such city or town, in such manner as is or may be prescribed by law for the condemnation of real estate.''

Subdivision 69 of the above section (8987) is section 2 of L. 1893. It reads in part: ''Sixty-ninth—When the right to build and operate such water, gas or electric light works is granted to private individuals or incorporated companies by said cities and towns, they may make such grant to inure for a term of not more than twenty-five (25) years, \*    \*    \*.''

Subsection 67 of section 8987 expressly reserves the right of the city or town to condemn. Furthermore, the concluding words in subsection 70, giving cities and towns power to condemn ''in such manner as is or may be prescribed by law for the condemnation of real estate,'' clearly indicate the legislative intent to make the law there expressly referred to, available in condemna-

tion proceedings by cities and towns, consistent with subdivisions 67 and 70 of section 8987. The general law concerning the condemnation of real estate is to be found in C. L. 1921, chapter 140, section 6311, et seq. The city properly followed the procedure indicated in bringing the suit.

As to subdivision 70 of C. L. section 8987, counsel for the company argue that it does not authorize the condemnation of previously existing plants, nor any plants except those built under the provisions of subdivision 67. We have no doubt that if the general assembly meant the section to bear so narrow a construction, the exception would have been incorporated in the statute. We must disagree with counsel that the legislature intended such an exception that they failed to make.

All of the above constitutional and statutory provisions were in force before the company or its predecessors either bought or built a plant or acquired any property or property rights. Such provisions of the Constitution and statutes have remained in our books ever since and are still the law.

Concerning the same law of 1899, it is also argued that the power to condemn is not germane to the title of the act; that the act embraces more than one subject and that the subject is not clearly embraced in its title, thus violating article V, section 21 of our Constitution. The title reads: "An act concerning water works, gas works and electric light works in towns and cities and to repeal all acts and parts of acts in conflict therewith." L. 1899, c. 153, p. 419. It would be exceedingly difficult, if not altogether impossible to choose a title to the act without redundancy that could more clearly and accurately forecast the text and body of the law or give it greater harmony with the title than the words selected. We must again disagree with counsel and hold that the statute applies to plants acquired before as well as after its passage. There was no destruction of any vested right in this. Whatever rights the company or its prede-

cessor acquired were obtained in contemplation of and subject to the constitutional and statutory provisions, sufficient to put everyone on notice that such rights might be exercised.

The legislature is also inhibited from making any irrevocable grant of special privileges, franchises or immunities. Colo. Const. art. II, section 11. This limitation applies to municipalities. *Thomas v. Grand Junction,* 13 Colo. App. 80, 84, 56 Pac. 665.

Notwithstanding the above enumerated powers of cities and towns to exercise the right of eminent domain for electric light plants, counsel for the company argue that the general assembly, at three different sessions, have abrogated such rights, citing Laws 1901, c. 56, C. L. 1921, sections 6360 and 6361; Laws 1905, c. 125, C. L. 1921, sections 9172 to 9176, both inclusive; Laws 1907, c. 175, C. L. 1921, sections 6352 to 6359, both inclusive. Copious quotations from the above provisions are unnecessary, for none of them have any bearing on the facts of this case. Indeed, if we should copy all of these statutes word for word in this opinion, it would only accentuate their foreignness to the matter in hand. None of them either expressly or impliedly repeal the sections quoted under which the city proceeded. Two citations, one from the 1905 statute and one from that of 1907 illustrate this. Section 9176, C. L. 1921, the concluding clause of the statute passed in 1905, reads: ''Nothing herein shall be construed as in any way modifying or restricting the right of cities and towns to purchase or erect electric light works in the manner now provided for by law.''

Section 6359, C. L. 1921, the final section in the statute passed in 1907, reads: ''Nothing in this act contained shall be construed to authorize any person, partnership, association or corporation to erect any poles, construct any telegraph, telephone, electric light power or pipe line or extend any wires or lines along, through, in, upon, under or over any streets or alleys of any city or incor-

porated town without having first obtained the consent of the municipal authorities having power to give such consent of such city or incorporated town.''

There is not only nothing in the statutes of 1901, 1905, or 1907 to justify the argument that the city has been deprived of the right of eminent domain for public purposes, delegated to it by the legislature, pursuant to the constitutional provisions quoted, but the thought that the company is entitled to perpetual freedom from the exercise of such right is repugnant to the Constitution itself, as will appear from the sections quoted.

The ordinance of 1903, under which the company operated in Loveland, did not in express terms contain the condition required by subdivision 67 of section 8987 above quoted, that the municipality should have the right and power at any time to purchase or condemn the works. Counsel for the company intimate that because of this omission—no such power being expressly reserved—the power does not exist. This argument is not sound. The franchise could not be granted at all except under the conditions prescribed in the statute, and although the clause in question was omitted from the ordinance itself, the law then existing will be read into the ordinance and made a part of it as much as if it were written there. This is fundamental law. *Denver v. N. Y. Trust Co.,* 229 U. S. 123, 137, 33 Sup. Ct. 657, 57 L. Ed. 1101; *Clay Center v. Clay Center L. and P. Co.,* 78 Kans. 390, 97 Pac. 377; Donnelly on Public Contracts, p. 290.

Counsel for the company have presented an attractive sketch of the facilities and opportunities for enlarged public service by an organization such as theirs, the growth of the electric lighting business, the public confidence evidenced by the legislative powers permitting the organization of such companies, means of obtaining rights of way and franchises, and regulation and control by public utility boards as to rates and other conduct of the business. From this it is argued that the great privileges accorded to such companies indicate a new

public policy to take away from municipalities the right to handle their own electric lighting systems. We cannot subscribe to this theory. While no doubt the powers so granted by the legislature to such companies should furnish a splendid incentive to them to merit public approval, nevertheless they cannot lead us away from the fact that the servant is not greater than his master, that the powers of the people that may be exercised through municipalities or otherwise are reserved to them, and that any tendency toward the grant of exclusive and irrevocable privileges, so ably advocated by counsel for the company, are completely checked and fortified against by our Constitution and statutes. We refer to this only because it furnishes a complete answer to the greater part of the brief of counsel for the company. In *Holyoke v. Smith,* 75 Colo. 286, 226 Pac. 158, we held that the operation of an electric light plant by a town is the performance of a municipal function specifically authorized by C. L. 1921, section 8987. There is no difference between a city and town in this respect. The whole spirit of the law is, so far as possible, to permit under reasonable restrictions the privilege of self government, and the acquisition of such plants are within the discretion of the municipality. *Thomas v. Grand Junction, supra,* a case involving water works.

When the company dismantled the old steam generating plant at Loveland and connected its distributing system in the city with the central power station of the company, the Loveland part of it did not thereby lose its identity as a separate electric light plant and it remained subject to condemnation by the municipality originally granting the franchise. *State ex rel. v. Circuit Court,* 162 Wis. 234, 155 N. W. 139.

We shall conclude our observations upon the right of the city to institute condemnation proceedings with the remark that for the reasons above stated, the city had such right and that it was properly exercised.

2. Vote of taxpayers: As to the next point raised by counsel for the company, that condemnation proceedings by the city must be first authorized by a vote of the taxpayers, this is sufficiently replied to by the complete silence of the statute, which does not require such vote. We would be usurping the province of the legislature if we should insert such a requirement. This contention must be resolved against the company. An unauthorized election, purporting to either sanction or disapprove of a proceeding lawfully brought by the city to condemn property for public use, would bind no one, no matter which way the votes might be cast. They would be only straw votes, at best.

Arguments have been made on both sides concerning the effect of the failure of the taxpayers to vote on another question; namely, as to the granting of the franchise by the city in 1903 to the predecessor in interest of the company, under the provisions of C. L. 1921, section 8987, but there is no necessity for passing on this. All that the inquiry would lead to would be a determination as to whether the company and its predecessor were trespassers in Loveland before the suit. If the matter was of importance to the city before, it is nothing to concern us now, for its significance ended when the city accepted the verdict of the jury as to the amount to be paid, and deposited its money in court for the use of the company. The rights of the company under the franchise having been terminated by the condemnation, any previous cause that might have contributed to the demise of the franchise is a mere abstract question. We shall not hold a futile autopsy over the franchise, nor decide moot questions.

3. Regarding the third claim of the company, that the city must take the entire plant, if it takes anything: By this, the company of course means all that part of the plant within the city limits, in particular the substation and certain transmission lines which were excluded from the condemnation. But the claim of the company in

this respect is also not well founded. The company is entitled to the actual cash value of the property taken, excluding the value of the franchise or right of way through the streets and exceptions noted in subdivision 67 of section 8987, and also damages, if any, to the property not taken. C. L. 1921, section 6327. The necessities and requirements of the city, not what the company would like to dispose of, is the determining factor as to what shall be taken. The company is compensated by payment for what the city takes from it, and also by payment for damages to the residue of its property in the way that the statutes prescribe. It cannot force the city to buy or condemn that which it would be a waste of money to acquire, and the city itself is without such right. For the city to dissipate its revenues in such manner, would be prodigal and improper and a misuse of public funds.

The company suggests that it will forego what it conceives to be its legal right to have its real estate (the substation property) taken with the rest of the porperty condemned, if the city will disclaim any intention to dispossess the company hereafter or to deprive it of the right to operate its substation for its customers out of the city, and will grant continuous rights of way through the streets and public places in Loveland. But the company asks too much; the city does not have to take property that it does not need, nor have the city authorities any power to execute a disclaimer upon behalf of themselves or future city councils, depriving them of the free exercise of their municipal powers upon behalf of the inhabitants, that under the mandate of the statute must be and are expressly reserved to the city. *Pikes Peak Company v. Colorado Springs,* 105 Fed. 1, 13, 44 C. C. A. 333.

The engaging hope of a perpetual franchise and immunity from condemnation proceedings that threads the entire brief of counsel for the company must be destined to disappointment. This action itself indicates the pur-

pose of the city to run its own plant; the franchise under which the company has operated has been terminated, and any future application that the company may wish to make to the city for further rights or franchises cannot be determined here.

In *Lavelle v. Town of Julesburg,* 49 Colo. 290, 294, 112 Pac. 774, it was held to be the province of the town authorities to determine what property shall be taken upon which to erect waterworks, and this decision is conclusive unless fraudulent or unreasonable. The same rule will apply here and no fraud or unreasonableness has been shown.

4.  As to the claim of the company that the city can take no property beyond the city limits for its electric lighting plant:  If this be true, then the city must not only abandon its hydro-electric plant on the Big Thompson, eleven miles from the city, and its transmission lines therefrom, but must also let all of its surplus electrical product go to waste, no matter what its plant generates or may generate, and it would also involve the giving up of any thought of municipal growth, regardless of the general well being.  We shall not so hold.  From a business standpoint, the efficient and economical construction of the plant from the beginning essentially requires a capacity not only for present use, or for a given number of waiting customers, but due provision must also be made for a healthy city growth.  The city may, and it is its duty to make provision for, and to dispose of such surplus product, when it does not impair the primary usefulness for which the plant was built.  The dictates of common business prudence require that it be done. *County of Larimer v. City of Fort Collins,* 68 Colo. 364, 189 Pac. 929; *Pikes Peak Power Co. v. City of Colorado Springs, supra; Milligan v. Miles City,* 51 Mont. 374, 153 Pac. 276, L. R. A. 1915C, 395.  No special legislative authority is necessary.  19 R. C. L. p. 788, section 95.  The condemnation statutes do not limit the rights of the city to take property only within its municipal borders.  The

question whether the use be public is a judicial question. Colorado Constitution, article II, section 15, and the above authorities amply show that the trial court did not commit any abuse of discretion.

In principle, we ascertain no difference between the acquirement of proprietary rights by the city for water works, than for electric light works; or for transmitting electrical current for the use of the public, than a current of water, regardless of any detail in procedure. They are both public uses and necessary to the general well being. Such acquirement for either or both purposes is authorized by the same statute. C. L. 1921, section 8987; *County of Larimer v. City of Fort Collins, supra,* and cases there cited. If the rights of the city should be circumscribed in the manner advocated by counsel for the company, the result would be that no town or city away from the stream and not having natural water power within its corporate limits, could possess a modern hydro-electric plant for the use of its inhabitants, and the statute as to them would be a nullity. It is not our belief that any such discrimination or unnatural limitation was intended by the general assembly.

Counsel for the company cite *Mack v. Town of Craig,* 68 Colo. 337, 191 Pac. 101, as authority for the contention that the city has no implied right to condemn property outside the corporate limits. But that case, on page 339, quoting from 28 Cyc. 605, recognized that such right might be conferred, either in express terms or by necessary implication, it being there said that there are cases in which, without any special grant of such power, it has been implied as. necessary in order to carry out powers granted. This is such a case.

*Mack v. Town of Craig, supra,* involved the construction of a sewer; the question of necessity could not exist under the facts of that case. The court did not hesitate to say that a town had no right to pollute a public stream by emptying its sewage therein, and upon the pretense

of necessity to do that which if done by an individual, would be punished criminally. The court properly held in effect that there could be no necessity to commit a crime, remarking further that it is highly questionable whether in view of article XVI of section 5 of our Constitution, any legislative permission could be given to pollute public streams.

No such question as in *Mack v. Town of Craig* is involved here. In this case, there is nothing to militate against the necessities of the city, but on the contrary, there is a double necessity or two-fold reason for the existence and exercise of an implied power upon the part of the city to acquire land by condemnation or otherwise for public use outside its corporate limits, first, to get water power for the generation of electricity, and, second, to receive and distribute the load. We doubt if any city in the state is physically situated so as to permit of the construction or operation of such a hydro-electric plant wholly within its corporate limits. A construction to give the statute effect will be followed, rather than one to give it an absurd meaning and to render it nugatory.

The city acted within its powers in the inclusion of the property in question in the condemnation proceeding. A large discretion is necessarily vested in it, in determining what property to take and how much is necessary. Lewis on Eminent Domain (3rd Ed.), page 1063.

5. Limitation of scope of inquiry in condemnation proceedings as to details of municipal finance: Counsel for the company have gone into the question of the right of the city to spend its money for the purpose of acquiring by condemnation, the whole or any part of a constructed electric light works. They say that the city got the money which it deposited in court for the use of the company under the provisions of C. L. 1921, section 8987, subdivision 6, which authorizes the borrowing of money or issuing of bonds "* * * for the purpose

of the purchase or construction of a plant for electric light works, * * *.'' Whereas, counsel further indicate, this suit is not to purchase or construct, but to condemn, hence, they argue, there was a misappropriation or improper diversion of public funds by city officers.

It is to be observed that the present objections do not and cannot go to the question of the legality of the proceedings under which the municipal bonds or obligations were issued or the right of the city to get money that way. This matter was determined in *Shields v. City of Loveland,* 74 Colo. 27, 218 Pac. 913. In the present case counsel for the company challenge the manner of disposal of the funds by the municipal officers, after such funds lawfully came into the hands of the city treasurer. We remark that just how much of the money was raised by bond issues and how much by other municipal obligations, or the manner in which either was obtained or spent, are questions not to be asked in an action in eminent domain.

A brief analysis of the last named objection of counsel for the company readily makes apparent the injustice we would do to the parties litigant, as well as to others not before the court, by any effort upon our part to determine nonjusticiable questions in a special statutory condemnation proceeding. Concerning the claim that there was a misappropriation or improper diversion of public funds by city officers, an action in eminent domain cannot be converted by respondent's answer, or at all, into a trial for alleged misfeasance or malfeasance of municipal officers, nor do we hold or intimate that there was any such breach of public duty. Counsel for the company do not of course mean to apply their charge offensively, nor to say that the city officers converted public funds to their own use. Their argument relates to an alleged improper diversion of city monies from one fund to another, or co-mingling of such funds.

To state it in another way, the practical effect of the objection is this: When the city gets money for electric

light works, and when the city treasurer attempts to "keep a separate account of each fund or appropriation, and the debts (debits) and credits belonging thereto," as required by C. L. 1921, section 9134, then, if counsel's argument is sound, the treasurer would of necessity be compelled to split the electric light works fund in two, creating one fund that might be called, "Fund to purchase or construct electric light works," and another, "Fund to condemn electric light works," with the debits and credits of each kept separately as long as the accounts exist. It is to be remembered that the electric light works unit of the city has been acquired in all of the above ways, from separate sources and at different times.

Whether it is necessary or possible to observe these fine distinctions and keep two separate funds or accounts as to monies acquired by the city for the same plant and same ultimate purpose, electric light works, nevertheless, these questions present details of corporate finance that are wholly alien to a special statutory condemnation proceeding and they are not cognizable here.

It is also to be recalled that it was solely because of the inability of the city to purchase from the company and to agree upon a price, that the city took the next step and exercised the right of eminent domain.

*Shields v. City of Loveland, supra,* is cited. That was a suit to enjoin proceedings to establish a municipal electric light plant, and to declare void the ordinance authorizing it. It relates to this identical electric light plant, and covers questions of bond issues to pay for the plant. The injunction was denied and the ordinance was held to be valid. That case provides no defense in an action in condemnation to acquire the plant, or any part of it, and was not so intended. In the case at bar, questions of municipal bonds and the rights of holders thereof are not in issue and we shall not decide them. Such parties are not before the court.

This court held in *Denver Power and Irrigation Co. v. Denver and Rio Grande Railroad Co.*, 30 Colo. 204, 69 Pac. 568, 60 L. R. A. 383, that an intervention would not be permitted which changed the entire character of the action from a proceeding in condemnation to one in quo warranto.

In *Schneider v. Schneider*, 36 Colo. 518, 86 Pac. 347, it was held that an action in eminent domain cannot be converted into an action to quiet title. The words used in the Schneider case on page 523 of the opinion are as appropriate here as there. We quote them: "So far as it is concerned it must remain an action in eminent domain, and no issue can be injected into the case which will change its character." This doctrine was approved in *Haver v. Matonock*, 75 Colo. 301, 305, 225 Pac. 834.

In the instant case, all that is necessary to be known about the money furnished by the city, is that the full amount awarded respondent company by the jury has been deposited with the clerk of the court as required by the condemnation statute. This matter being undisputed, there is nothing more to be said about where the money came from.

6. Damages and instructions to jury: The first instruction given by the court followed the directions of C. L. 1921, section 6328, requiring the jury to ascertain and return a verdict stating: First—An accurate description of the property taken. Second—The actual cash value of the property taken. Third—The damages, if any, to the residue of such property; and Fourth—The amount and value of the benefit. These instructions were followed by eight others, not necessary to repeat, amply safeguarding the rights of both petitioner and respondent, and sufficiently advising the jury as to their duties, and as to the computation of damages. Among other things, the jury was directed to consider the evidence of the value of the property as a going concern. In some respects, we think that the instructions were

more liberal to the respondent company than the facts justified, but as to this the city cannot now complain, for although it saved exceptions to the instructions, as did also the company, nevertheless the city finally accepted the verdict and deposited the amount of the award of the jury in court for the use of the company, as required by law.

The jury followed the instructions of the court. Their verdict shows their determination as to the first, second, and third elements above required; as to the fourth item, the amount and value of the benefit, they found the value of the benefit to be nothing. They went over the ground and personally examined the property. We find no error in the instructions given or refused, nor any failure upon the part of the jury to do their duty. All necessary elements of damage were properly submitted, argued, and considered.

A more complete resume of the pleadings, evidence, and instructions, and an analysis on paper of all questions of damages, and other objections raised by counsel for the company, would well-nigh involve the writing of a separate book, without doing anyone any good. The many objections raised here caused this opinion to be extended beyond our desires. We have felt it necessary to say all that we have said, to do justice to both parties, but we must be excused from further prolonging the end, with the assurance to counsel that we have not slighted our task by failing to give due consideration to all material questions raised by the assignments of error and argued in the briefs. A verdict based on conflicting evidence will not be needlessly disturbed.

Upon the subject of damages, it is pertinent to again refer to the fact that the works constructed by the company were erected and operated in the face of the full warning in C. L. 1921, section 8987, that the city would have a right to condemn after the company had enjoyed its rights during the periods prescribed in subdivision 67 of such section,

Prior to the condemnation, the city did not operate its own electric lighting system. The respondent, Public Service Company, is and was under the jurisdiction of the Public Utilities Commission. As to public utilities under such jurisdiction, we held in *Ohio and Colorado Smelting and Refining Co. v. Public Utilities Commission,* 68 Colo. 137, 187 Pac. 1082, that as to extensions and improvements made without the approval of the commission, if they are found to be unprofitable, the company must be the loser, and that it will not be permitted to charge the loss to the public. There is no record in this case of any such consent as to extensions and improvements made by the company in or about Loveland. The rule must apply, subject, however, to the right of the company to receive the actual cash value of the property taken " * * * excluding all value of the franchise or right of way through the streets, and also excluding any value by virtue of any contract * * * or private rental or otherwise entered into with the municipality in excess of the actual value of the works." C. L. 1921, section 8987, subdivision 67. The company is also entitled to recover for damages to the residue. The company has been compensated by all allowable damages.

Independent of the above public utilities case in 68 Colo. 137, there must be a limitation upon the extent of the damages recoverable. They cannot go to the heart of the statewide operations of the company. In other words, as we said in *Keller v. Miller,* 63 Colo. 304, 165 Pac. 774, damages to the remainder by what is done elsewhere than on the part taken are not to be considered.

Every presumption is in favor of the award, and its invalidity must be shown, by anyone asserting it, by clear and satisfactory evidence. *City of Eau Claire v. Eau Claire Water Co.,* 137 Wis. 517, 119 N. W. 555.

In *City of Omaha v. Omaha Water Co.,* 218 U. S. 180, 30 Sup. Ct. 615, 54 L. Ed. 991, 48 L. R. A. (N. S.) 1084,

it was held by the Supreme Court of the United States that a transaction of great magnitude such as the purchase by a city of a water supply system will not be defeated because of minor obstacles. The large and expensive hydro-electric system of the growing city of Loveland is on the same footing, and no right of the company has been violated in this acquisition by the city.

We are confident that if there had been any reversible error committed, it would have been brought to light by the able and exhaustive briefs that have been filed. We find no such error and the judgment is therefore affirmed.

MR. JUSTICE DENISON not participating.