**COLORADO CENTRAL POWER CO. v. MUNICIPAL POWER DEVELOPMENT CO., Inc., et al.**

No. 9966.

District Court, D. Colorado.

Dec. 10, 1932.

962

Archibald A. Lee, Benjamin Griffith, and R. H. Blackman, all of Denver, Colo., for plaintiff.

Clarence C. Conant, of Englewood, Colo., and James H. Pershing, Robert G. Bosworth, and John Pershing (of Pershing, Nye, Bosworth & Dick), all of Denver, Colo., for defendants.

SYMES, District Judge.

The plaintiff, a corporation organized and existing under the laws of Delaware, is a public utility engaged in the sale and distribution of electric light and power in Englewood, Colo., and that neighborhood. Its franchise, granted to its predecessor by the city in 1920, was assigned to it in 1926. This franchise was for 25 years, with the right reserved to the town to purchase and condemn the plant within the city limits at two certain specified dates only, 15 and 20 years after 1920, and contains a contract with the city for lighting of the city streets, etc., for 25 years, for which plaintiff receives over $5,000 a year. Plaintiff does not own or operate a generating plant.

The city through the efforts of the defendant Henriksen entered into a contract, dated May 20, 1932, with the defendant, the Municipal Power Development Company—a Minnesota corporation, hereinafter referred to as the development company—for a complete engineering survey of the requirements of the city for a municipal water and electric light and power system, including a separate estimate of costs, and plans and specifications for each, etc. The development company was to be paid not to exceed $1,000 by the city for this survey. If the city should elect, however, to erect the proposed electric plant and water system, the development company agreed to tender a written contract to construct and install the same according to the plans and specifications submitted in its survey, at a price not to exceed its estimate of the cost, and take in payment "Revenue Bonds" of the city, payable solely from and secured by the net revenues of the new plant.

The defendants Wood & Weber, Inc., and Franklin P. Wood, were employed by the development company to make this survey, which was submitted to the city council June 9, 1932. The actual specifications were not completed, however, until about July 11, 1932. On June 29, 1932, the council formally approved the project and invited bids from contractors, in accordance with the plans and specifications on file in the office of Wood & Weber, "employed by the city as special engineers," to be filed with the city clerk by July 11, 1932. It is alleged and not denied that the said Wood & Weber were also employees of the development company. Only two bids were submitted, one from the development company, and the other, at a higher figure, from two local parties, Anderson & Bell, who, according to the evidence, do not possess the experience and responsibility for a job of this size. The bid of the development company was accepted, and a contract dated July 14, 1932, was made, calling for the construction of the entire electric light and water system for the sum of $599,872.74, or less, depending on certain alternatives.

Later, on August 8th, the city council passed an ordinance purporting to comply with chapter 192, p. 730, Session Laws of Colorado 1927, and calling a special election of the qualified property electors of the city for September 2, 1932, at which a majority of the qualified electors voted in favor of the plan.

The water system calls for the digging of several so-called shallow wells at specified locations, with the necessary pumps, housing, piping, etc., operated by power from the electric plant, and the use of city water mains already installed.

The light and power plant is to consist of a generating plant, and the erection of a new distribution system of poles, wires, etc., or, in the alternative, the acquisition by condemnation of the distributing system of the plaintiff company. The other defendants are city officials.

## Jurisdiction.

It is conceded that the necessary diversity of citizenship exists, and clearly the matter in controversy exceeds in value $3,000.

It is argued, however, that no rights of the plaintiff are invaded, because its franchise is not exclusive; that there is nothing to show an intent on the part of the city to abrogate the latter, or its contract for lighting the city streets; that all that is complained of is that the city proposes to build and operate its own plant, and possibly acquire by condemnation plaintiff's poles, wires, etc., for which it will, of course, be adequately compensated.

█ It is the law that a city is not prevented from building or operating its own electric light plant merely because a private company is already operating one under a franchise granted by the city or the Legislature. Public Service Company v. City of Loveland, 79 Colo. 216, 245 P. 493.

The gravamen of the complaint is: That plaintiff's franchise rights and business in Englewood constitute a property right, and that the steps taken by defendants in respect to this proposed municipal system constitute an illegal invasion thereof; that its damages are irreparable and justify equitable relief. See Commonwealth of Pennsylvania v. State of West Virginia, 262 U. S. 553, at page 593, 43 S. Ct. 658, 67 L. Ed. 1117, 32 A. L. R. 300.

Many reasons are alleged why the proceedings so far taken are invalid; part affirmative in the sense that certain of the proceedings are illegal; others negative because, as alleged, certain statutory requirements in the nature of conditions precedent have not been complied with.

█ In Denver Tramway Corporation v. People's Cab Company (D. C.) 1 F. Supp. 449, a somewhat similar question of jurisdiction was presented. On the authority of the cases there cited (Frost v. Corporation Commission of Oklahoma, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483, and others), and the late case of City of Campbell v. Arkansas-Missouri Power Company (C. C. A.) 55 F. (2d) 560, I held the franchise rights of a public utility constitute a property right within the protection of the Fourteenth Amendment, and that no person can lawfully engage in competition with it to its direct injury, without authority from the Legislature direct or derived, and that, in the absence of a valid grant to others, its franchises are exclusive against any person or corporation attempting to operate a similar business without lawful authority, and it may resort to a court of equity to restrain any such illegal operation to the extent that it constitutes an injurious invasion of its property rights.

Therefore, granting the city of Englewood has power to construct and operate an electric light and power plant, do the proceedings so far taken to that end comply with the applicable statutes of Colorado?

I. The plaintiff contends that section 9057, Comp. Laws of Colorado 1921, providing "all work done by the city in the construction of works of public improvement of every kind shall be done by contract to the lowest responsible bidder on open bids after ample advertisement, * * *" and chapter 192, p. 730, Session Laws of Colorado 1927, approved March 18, 1927, entitled, "An Act relating to the financing or the acquisition of public utilities by cities and towns," are binding upon the city and have not been complied with. The defendants say they have complied with the latter, and, having done so, said section 9057, supra (known as the "bidding statute"), has no application.

█ Counsel for the defendants say that in this matter defendant city was acting in its proprietary or private character; as distinguished from its other class of powers, denominated public or governmental; and that, when so doing, it may exercise a wide discretion, and that the power of the Legislature over it is not omnipotent, but is to be governed by the same rules as a private corporation.

This division of powers is recognized by text-writers and adjudicated cases. It is however, a court-made rule in derogation of the fundamental principle that municipal corporations are the creation of the sovereign state. It was first made to enable courts to impose common-law liability on municipal corporations for the neglect of their servants, etc., and should not be extended beyond this objective to enable municipalities to do that which the Legislature has forbidden. Dillon, Municipal Corporations (5th Ed.) § 109; Veraguth v. City of Denver, 19 Colo. App. 473, 76 P. 539.

In McQuillin on Municipal Corporations (2d Ed.) vol. 1, § 189, the distinction is recognized, with a limitation stated in the following language of Judge Cooley in a leading case of Michigan (People ex rel. Board of Park Com'rs v. Common Council of Detroit, 28 Mich. 228, 15 Am. Rep. 202): "But authority in the legislature to determine what shall be the extent of a capacity in a city to

acquire and hold property is not equivalent to, and does not contain within itself, authority to deprive the city of property actually acquired by legislative permission."

And, further on: "The right of the state is a right of regulation, and not of appropriation," which is all that is involved here.

In City of Trenton v. New Jersey, 262 U. S. 182 at page 187, 43 S. Ct. 534, 537, 67 L. Ed. 937, 29 A. L. R. 1471, it is said: "In the absence of state constitutional provisions safeguarding it to them, municipalities have no inherent right of self-government which is beyond the legislative control of the state. A municipality is merely a department of the state, and the state may withhold, grant or withdraw powers and privileges as it sees fit. However great or small its sphere of action, it remains the creature of the state exercising and holding powers and privileges subject to the sovereign will."

And page 189 of 262 U. S., 43 S. Ct. 534, 537, 67 L. Ed. 937, 29 A. L. R. 1471: "The reasons given in the opinion ([East Hartford v. Hartford Bridge Co.], 10 How. 533, 534, 13 L. Ed. 518) support the contention of the state here made that the city cannot possess a contract with the state which may not be changed or regulated by state legislation."

The rule not being self-operating, we look to the Constitution, statutes, and adjudicated cases of the particular state involved to see to what extent, if any, the principle defendant advances has been recognized.

In 12 C. J. p. 755, it is said: "In Colorado the right of local self-government is in all respects subordinate to the power of the legislature."

See, also, 43 C. J. p. 279, note 26. The above statement is made upon authority of In re Senate Bill, 12 Colo. 188, 21 P. 481, wherein the court held that: "Municipal corporations are creatures of legislative enactment; and, in the absence of inhibitory or limiting constitutional provision, the general assembly has plenary power to adopt such measures as shall in its judgment be most conducive to their efficiency and usefulness."

And page 191 of 12 Colo., 21 P. 481, 482: "There is strong reason for recognizing * * * the right of local self-government in cities and towns; but this is, with us, generally a matter pertaining to the policy or wisdom of proposed legislation, rather than a question of constitutional construction."

In view of Shields v. City of Loveland, 74 Colo. 27, 218 P. 913, and Denver v. Bossie, 83 Colo. 329, 266 P. 214, the above case may not fully support the text of Corpus Juris, supra, unless read as recognizing an exception as to matters in which the Constitution expressly or impliedly limits the power of the Legislature. We think, however, the question, so far as the case at bar is concerned, is settled by Dalby v. City of Longmont, 81 Colo. 271, 256 P. 310, distinguishing Town of Holyoke v. Smith, 75 Colo. 286, 226 P. 158. The Dalby Case specifically holds (page 272 of 81 Colo., 256 P. 310,. 311): "It is a mistake to assert that the Legislature may not thus regulate the action of the city with reference to its private property," and that the Legislature may put what limitations it pleases, not forbidden by the Constitution, on a municipal corporation which itself has created; that the corporation has no power save what the Legislature gives, and, further, that the Legislature has power to regulate the manner in which a city shall exercise its power to contract regarding its property. The case involved and upholds the so-called "bidding statute."

II. Chapter 192, p. 730, Session Laws of Colo. 1927, provides that no public utility shall be acquired by any city until the plan for such acquisition shall have been adopted by ordinance, approved by a majority of the qualified property electors. The ordinance shall describe the property to be acquired, the full purchase price to be paid, the method of payment, and the total obligations to be incurred, whether by way of general obligation bonds or by way of obligations chargeable solely or in part against the income of such utility. It would seem that the Legislature intended the statute to apply to a situation where so-called revenue bonds are provided for.

Two ordinances, No. 3, providing for the waterworks, and No. 4, for the electric light plant, were separately voted on and ratified by the qualified electors, who had the opportunity to approve or disapprove either, although it was stated that it was planned to operate them as a unit.

Ordinance No. 3, standing alone, does not make the city a competitor of plaintiff's; but, passing that, plaintiff seems fearful lest the final cost of the electrical plant be less than the outside figure provided for, depending on whether plaintiff's distribution system is acquired by purchase, condemnation, or at all. Followed to its logical conclusion, the argument is that the possibility of effecting a saving by changes of which the voter is informed invalidates the ordinance and the election. The statute demands only that the voter be

intelligently informed in the four respects enumerated. He is not interested in the details, and a meticulous statement of the plan is not required.

Common sense and good business practice approve the alternate propositions, and the courts have recognized this. Public Service Co. v. City of Loveland, 79 Colo. 216, 245 P. 493. Certainly some discretion may properly be vested in the local authorities.

Section 2 of the water ordinance fully describes the location and source of water supply and the works to be constructed in connection therewith. No other source is referred to or authorized, so, even if the city does contemplate other sources of supply, they are not involved in this suit. We conclude that chapter 192, p. 730, Session Laws of Colo. 1927, have been fully complied with.

■ III. Defendants argue that the bidding statute, supra, section 9057, Comp. Laws 1921, has no application for two reasons: (a) Because no work is being done by the city; that the property is being acquired solely under the provisions of chapter 192, Session Laws of Colo. 1927, which we have just discussed; and (b) that, even though it is held the work is being done by the city, it is not of the character contemplated by the bidding statute; that statute only applies, it is said, to work done by the city and paid for out of the public revenues or by taxation.

The first contention can be quickly disposed of. Both contracts, the two ordinances, and all proceedings so far taken disclose that the city, in legal contemplation, proposes to build the combined plants; that specifications have been prepared, bids advertised for, and a contract let. It is idle to argue that such is not the case simply because the city will not actually hire the labor or purchase the material, etc. It cannot purchase that which is not in existence.

■ The text-writers in discussing the distinction between the public or governmental, and what they term proprietary or private powers of a municipality, purport to give it wide application, but none state that municipalities are wholly divorced from legislative control, even when acting in the latter capacity. Even Judge Dillon, who has propounded this theory to greater lengths than any other writer perhaps, does not deny the Legislature power, in the absence of constitutional provisions, to prescribe limitations on the exercise of these so-called private or proprietary powers. Dillon on Municipal Corporations (5th Ed.) vol. 1, § 239. As already shown, supra, Colorado has not adopt-

ed the rule, and we express the view that the restrictions that the defendants would cast aside are most salutary and consonant with a sound public policy. Englewood has plenary power to regulate the rates and service of the plaintiff, so duplication of plant is economic waste. Under this particular set-up the citizens of Englewood would be paying for this new electric equipment after it had become obsolete. In the end they pay the bill, whether it is financed by "Revenue Bonds," or taxes. We recognize the constitutional debt limitation does not apply. Franklin Trust Co. v. City of Loveland, Colorado et al. (C. C. A. 8th) 3 F.(2d) 114. Nevertheless these so-called "Revenue Bonds" may be properly described as an artifice or scheme to do that which the Constitution declares to be against public policy, and attempts to forbid. It should not be encouraged, especially at this time of depression, high taxes, and public indebtedness.

Denver v. Hubbard, 17 Colo. App. 346, 68 P. 993, has no application; the court simply holding there was no limitation upon the power of the city to make the contract in question; and in Pikes Peak Power Company v. City of Colorado Springs (C. C. A.) 105 F. 1, all Judge Sanborn actually decided was that the city, having passed an ordinance granting rights to private parties in the nature of a franchise which the grantee had accepted and in part performed, could not repeal the ordinance, for the obvious reason that it would violate the constitutional prohibitions against impairing the obligation of contracts. Furthermore, it is to be observed that the statute in question by its very terms applies to works of public improvement of every kind; thus evincing an intention on the part of the Legislature to give it the broadest possible application.

■ Turning to the record, we note that the plans and specifications for the work in question were prepared by the successful bidder, the defendant development company; that it promoted this scheme to put the city into the light and water business without risking any capital of its own, and under its first contract with the city, of May 20, 1932 (Exhibit A), it agreed to prepare the plans and specifications and to submit a bid thereon. Such a set-up, while not illegal perhaps, will be carefully scrutinized. There is a great deal to be said for the charge that the defendant development company thereby obtained an unconscionable advantage as a bidder. It had information helpful in making up its bid not available to other prospective

bidders. Furthermore, the time given for preparing bids is suspiciously short, and no sound reason therefor is advanced. According to the uncontradicted evidence, it was impossible for prospective bidders to obtain all the necessary information and data required by the plans and specifications, or rather the lack thereof, within the 12 days allowed.

For instance, bids were invited for an electric distributing system without specifications as to the height, size, quality, and number of poles, types of transformers or quantity, kind, or type of wire to be used. The same criticism applies to the specifications for all structures, type, capacity, and character of pumps, and other machinery items. One qualified witness testified the plans for the structures for filtering the water and the power house, etc., were so sketchy, and with no little detail in them, that it would be impossible for any one to work them out, without making additional plans; that bidders would, of necessity, have to supply at their peril certain assumptions not contained in the specifications, and that different engineers might conscientiously work up bids to accomplish what was called for, and yet differ 100 per cent. in estimating the cost. In short, there was no opportunity afforded for submitting competitive bids on a common standard of comparison, both as to quantities and qualities of the many and varied types of materials called for.

As stated in Rhodes v. Board of Public Works of City of Denver, 10 Colo. App. 99, at page 110, 49 P. 430, 434: "For every purpose of genuine competition between bidders there is and can be no such thing as too great particularity in the description of the subject concerning which competition is invited. In order that bidders may really compete, they must have in mind precisely the same thing."

See McQuillin on Municipal Corporations (2d Ed.) vol. 3, § 1309.

Furthermore, the city had no independent expert advice. Apparently it adopted without question the very sketchy and incomplete specifications submitted by the development company under the contract of May 20, 1932. The development company was in reality the only bidder and obtained the contract. Such procedure not only violates the statute requiring the work be given to the "lowest responsible bidder" after "ample advertisement," but is contrary to the plainest dictates of public business practice. Public officials should not be permitted to thus play fast and loose with the funds of its citizens.

A business enterprise thus initiated is foredoomed to failure, and to involve the citizens in a costly experiment.

IV. Plaintiff says that defendants have violated the statute requiring that Colorado materials and supplies be preferred in all public structures, and that notice of this must be given in all proposals for bids. This statute is sections 453 to 455, inclusive, Comp. Laws of Colo. 1921. Sections 453, 454, apply only to supplies, etc., used in the maintenance and construction of state or municipal institutions. This language, as ordinarily understood, does not apply to a municipal light plant. The application of Section 455 is doubtful. We think, however, following the Bossie Case, 83 Colo. 329, 266 P. 214, this electric plant is a matter of purely local and municipal concern. In any event, the objection is premature. If applicable, it automatically becomes a part of the contract, and has not as yet been violated.

Many other objections are urged pro and con with great force. It is not necessary, however, to decide them. Some are premature; others—if we bear in mind that this is not a taxpayer's or class suit—are not justiciable in this action.

The plaintiff is entitled to injunctive relief.

Findings of fact and conclusions of law may be presented at convenience of counsel.