## No. 9491.

## MACK v. TOWN OF CRAIG.

1. MUNICIPAL CORPORATIONS—*Powers*. A town has no authority to condemn for sewer purposes private land situate without its limits.

Nor to pollute a public stream with sewage.

2. EMINENT DOMAIN—*What May Be Taken*. Neither public waters nor the bed or channels of public streams.

*Error to Moffat District Court, Hon. John T. Shumate,*
*Judge.*

Mr. A. M. GOODING and Mr. GEORGE A. PUGHE, for plaintiff in error.

Mr. W. B. WILEY, for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

PLAINTIFF in error brings the cause here to review a judgment of the District Court of Moffat County whereby certain of his land was awarded the town of Craig in condemnation proceedings, as an outlet for its sewage into the Yampa or Bear river. It was and is the purpose of the town to empty its raw and unpurified sewage into that stream, at a point bounded on both sides by lands of the plaintiff, and to carry it for a distance of about a mile through his property, which he uses mainly for dairy busi ness. Numerous errors have been assigned, but for the purposes of this decision it will be necessary to consider only such as go, first, to the question of the authority of the town to condemn and take land beyond its corporate limits, and, second, as to its right to pollute a public stream by emptying raw sewage therein.

The town relies upon section 6525, R. S. 1908, in which, the right is given to towns and incorporated cities to keep in repair sewers, culverts, drains and the like, and also power of eminent domain. There appears to be nothing, however, either in that section or in section 5359, R. S. 1908, which empowers cities and towns to assess the costs of such improvements to its inhabitants, or in section 5361, which specifies what class of improvements can be made, that either directly or by fair intendment authorizes such municipalities to exercise the power of eminent domain beyond their corporate limits. It is well settled that the power to construct such improvements does not carry with it the right to condemn private property to that end.

In Lewis on Eminent Domain, section 371 (3rd Ed.), it is said: "The authority to condemn must be expressly

given or necessarily implied. The exercise of the power being against common right, it cannot be implied or inferred from vague or doubtful language, but must be given in express terms or by necessary implication. When the right to exercise the power can only be made out by argument and inference, it does not exist. 'There must be no effort to prove the existence of such high corporate right, else it is in doubt; and, if so, the State has not granted it.' If the act is silent on the subject, and the powers given by it can be exercised without resort to condemnation, it is presumed that the legislature intended that the necessary property should be acquired by contract. * * * As a rule, a municipal corporation cannot condemn property beyond its limits, unless authority to do so is expressly given."

Upon the proposition that a municipality has no power to condemn property outside its corporate limits, unless authority so to do is specifically given, as stated above, 28 Cyc., at page 605, has this to say: "As a rule a municipal corporation has no power to purchase and hold land for a park, highway, or other municipal purpose beyond its territorial limits, unless the power has been specially conferred upon it by the legislature; and such power is not conferred by a general grant of power to purchase, hold, and convey such property, real and personal, as may be necessary for its public uses and purposes. The legislature, however, may confer such power, either in express terms or by necessary implication; and there are cases in which, without any special grant of such power, it has been implied as necessary in order to carry out powers granted."

So far as we are able to ascertain this general rule has been followed and approved with practical unanimity. In *Warner v. Gunnison,* 2 Colo. App., that court expressed its view of the rule at page 432, 31 Pac. 238, in the following language: "The jurisdiction of municipal authorities is usually limited to the territory occupied by the corporation. For this reason proceedings in condemnation cannot ordinarily be instituted as to property outside the corporate limits."

Also in *Healy v. City of Delta,* 59 Colo. 124, 147 Pac. 662, in discussing the right of a municipality to condemn the bed of a public stream for sewer purposes, it is said, at page 125: "It is assigned as error that the court was without jurisdiction to enter the judgment which in effect condemns the waters of the river, and makes it a part of the sewer system. This is the only question necessary to be considered. Municipal corporations can exercise the right of eminent domain only to the extent to which the power has been conferred upon them by statute. 'Not only must the authority to municipal corporations, or other legislative agents, to take private property, be expressly conferred, and the use for which it is taken specified, but the power, with all constitutional and statutory limitations and directions for its exercise, must be strictly pursued.' Dillon Mun. Corps., 5th Ed., sec. 1040. See also, Lewis on Eminent Domain, sec. 240. *Allen v. Jones,* 47 Ind. 438."

Thus from our own decisions it appears clear that, unless expressly empowered by statute ,the town of Craig has no authority to condemn land outside its corporate limits for sewer purposes. The bare right of the town to construct and maintain sewers can not be held to include the right to condemn property beyond its corporate limits in connection therewith. 15 Cyc. 569; *Riley v. Rochester,* 9 N. Y. 64; *Farwell v. Seattle,* 43 Wash. 141, 86 Pac. 217, 10 Ann. Cas. 130; *Wise v. Yazoo City,* 96 Miss. 507, 51 South. 453, 26 L. R. A. (N. S.) 1130, Ann. Cas. 1912B, 377; *Currier v. Railroad Co.,* 11 Ohio St. 228; Lewis on Eminent Domain, § 240; *Minnesota C. & P. Co. v. Koochiching Co.,* 97 Minn. 429, 107 N. W. 405, 5 L. R. A. (N. S.) 638, 7 Ann. Cas. 1182.

It is not disputed that the statute confers no direct or specific power upon municipalities to go beyond their corporate limits to condemn property for sewer purposes, but it is earnestly contended, however, that such power is given by necessary implication. A careful reading of the sections relied upon discloses no evidence of any such legislative intent. Since, under the authorities it is evident that the giving of the right to construct sewers does not also

grant authority to subject outside lands to the operation of eminent domain, such power is not implied because there is nothing in our statutes to even indicate, much less imply, such purpose. In reaching the conclusion that authority to condemn outside lands for sewer purposes does not exist in towns and incorporated cities, and that it was not the legislative intent to confer such power, we find strong support in the fact that the statutes do expressly confer power upon such entities to condemn land outside their corporate limits for the purpose of securing a water supply, section 6815, R. S. 1908. And also from the fact that by the provisions of the charter of the City and County of Denver the legislature has expressly conferred power upon that particular municipality to condemn lands outside its limits in connection with the construction of sewers. By specifically thus granting extra-territorial powers of condemnation the legislature must be conclusively presumed to have elsewhere intentionally withheld such power, and the argument that it exists by implication is, under such circumstances, not tenable, as there is no warrant of law for such conclusion.

In consideration of the question as to whether municipalities have a right to pollute state public streams it is to be noted that section 1817, R. S. 1908, expressly makes the pollution of such public waters by discharging sewage or any other obnoxious substance therein a criminal offense. There is nothing inherent in a municipality which gives it any greater right so to do than that which a natural person has.

Section 65 of Lewis on Eminent Domain declares that: "No case appears to have arisen in which the pollution of a stream has been accomplished for a public purpose and in the exercise of the eminent domain power." In Mining Co. v. Mining Co., 9 Colo. App. 407 (48 Pac. 828), it was said, at page 418: "We live in a region not blessed with rains and where all our industries, whether agricultural, manufacturing or mining, are dependent absolutely on the waters of our streams, as to those purposes for which water is a necessity. It is therefore quite consonant with the ap-

parent purpose, and declared will of the people, to subject the rights of the appropriators of the public waters of the state to such limitations as shall tend not only to conserve the property interests which the appropriators may acquire, but to preserve the remaining unappropriated waters in their original condition for the use and benefit of late comers, who by their labors and industry may further develop our interests and resources."

And in *Humphreys Co. v. Frank,* 46 Colo. 524 (105 Pac. 1093), this court, at page 531, said: "The fact that defendant in operating the mill uses waters which are not a part of the natural flow of a stream does not give it the absolute right to discharge into that stream the waste water mixed with hurtful slimes, or absolve it from liability for resulting injuries to third persons who have lawfully acquired prior rights to use the waters thereof for any beneficial purpose."

In *Winchell v. City of Waukesha,* 85 N. W. 668, 84 Am. St. Rep. 902, 110 Wis. 101, which was an injunction suit to restrain the City of Waukesha from emptying its sewage into the Fox river, the court says: "The right of the riparian owner to the natural flow of water substantially unimpaired in volume and purity is one of great value, and which the law has nowhere more persistently recognized and jealously protected than in Wisconsin. Not alone the strictly private right, but important public interests, would be seriously jeopardized by promiscuous pollution of our streams and lakes. Considerations of aesthetic attractiveness, industrial utility, and public health and comfort are involved. Amid this conflict of important rights, we cannot believe that the legislature concealed, in words merely authorizing municipalities to raise and expend money for the construction of sewers, a declaration of policy that each municipality might, in its discretion, without liability to individuals, take practical possession of the nearest stream as a vehicle for the transportation of its sewage in crude and deleterious condition."

That court in the above case also announced the rule that legislative authority to merely construct a sewer carried

with it no implication of a right to create a nuisance by the discharge of raw sewage into a stream, and that a city had no greater right in this respect than the individual.

Plainly the town of Craig by its acts is not only injuring a valuable property right of defendant, but is guilty of an invasion of the sovereign rights of the state, and is, under pretense of necessity, doing that which, if done by an individual, he would be punished criminally. Cities and towns, in the absence of direct legislative permission to that end, have no right to befoul and contaminate our public streams by discharging raw and unpurified sewage therein. Indeed, it is highly questionable, whether, in view of Article XVI of section 5 of our Constitution, any such legislative permission could be lawfully given.

It is the law of this jurisdiction that neither the public waters, nor the beds or channels of public streams, can be condemned and taken under eminent domain. *Healy v. Delta, supra.* It is contended that no such attempt is here being made. However, it is to be noted that the authorities hold that a pollution of a public stream is in effect such taking. 15 Cyc. 660, and Lewis on Eminent Domain, section 84. It is manifest that no one should be permitted thus to indirectly accomplish that which can not be legally done by virtue of eminent domain proceedings. The situation is one pre-eminently for legislative consideration.

The judgment of the trial court is reversed, and the cause remanded, with directions to dismiss it.

Decision *en Banc.*

Mr. Chief Justice Garrigues dissents.