## No. 16,926.

BETH MEDROSH HAGODOL ET AL. *v.* CITY OF AURORA ET AL.

(248 P. [2d] 732)

Decided September 9, 1952.

Mr. Samuel J. Frazin, Messrs. Donaldson, Hoffman & Goldstein, for petitioners.

Mr. Leslie A. Gifford, for respondents.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

This is an original proceeding in the nature of prohibition. On July 1, 1952, the city of Aurora filed its petition in the district court of Arapahoe county for condemnation of certain land therein described, being a part of a cemetery owned by the Beth Medrosh Hagodol Cemetery Association, a nonprofit, Colorado corporation. At an ex parte hearing on that date, the court entered its order finding that the petitioner was entitled to take possession of the property described in the petition and then ordered that upon deposit of $4400.00 being made with the clerk of the court, the petitioner be decreed to be in possession of, with full right to use and enjoy, the south two hundred feet of a tract described. Petitioner immediately went into actual possession and began the construction of a water reservoir, all without any notice to the owner of said property. On July 31, 1952, the cemetery association filed its petition here for a writ in the nature of prohibition according to our rules of civil procedure. On August 4, a rule was issued, directed

to the respondents, the city of Aurora and the district judge, to show cause, if any, why they should not be prohibited from conducting further proceedings in said condemnation proceedings. In response thereto, we have before us respondent's answer and a reply. The cemetery association contends that the city had no authority to condemn lands dedicated to use as a cemetery, and further, that if it can be said that it had such authority, then the court abused its discretion in granting immediate possession in an ex parte proceeding without notice.

Upon the record as presented, it appears that in the last analysis, the only question that requires determination is the validity of the trial court's order granting immediate possession. The other related questions may briefly be discussed as an indication for future guidance in similar proceedings.

It is alleged in the petition for condemnation that the cemetery property involved is situated within the limits of the city of Aurora and we notice from the pleadings and briefs in the proceeding, that such of this property as occasion has required, has been used for burial purposes since the incorporation of the cemetery association in 1904. It is a part of the unused or unoccupied portion that was sought to be condemned for the purpose of the erection of a water tower for the emergent needs in connection with the water supply and service of the city. That an emergency exists was alleged, and is not denied; however, there is no allegation, nor was there any showing made, that the particular property sought to be condemned was the only available property suitable for such purpose.

In entering the ex parte order for immediate possession, we hesitate in saying that the trial court abused its discretion or exceeded its jurisdiction, because it is clearly apparent that the court was misled by failure on the part of the attorney for petitioner to disclose, either by his petition or his statements to the court,

pertinent facts that undoubtedly were within his knowledge. An examination of the petition discloses that it does not recite the authority of the city in the premises to condemn the property involved; and further, it is stated, "that the city of Aurora has attempted to negotiate the purchase of said property from said owner; that said owner refuses to sell the property for any price." This is not an accurate statement, because, according to a letter, an exhibit herein, dated June 23, 1952, over the signature of the city attorney, addressed to Mount Nebo Cemetery Association, by which it may be considered as negotiations with the owner, a request was made for the owner to donate the following described land, which, it was stated, was the property in question: "Beginning at the SW corner of the SE ¼, NE ¼ of Section 2, Township 4 S., Range 67 W., thence East 157 Ft., thence North 155 Ft., thence West 157 Ft., thence South 155 Ft. to point of beginning." This is not the description of the land as set out in the petition for condemnation, which description is: "Beginning at the SW. corner of the SE ¼, NE ¼ of Section 2, Township 4 So., Range 67W; thence due East to a point on the West right of way of Sand Creek Lateral; thence Northwesterly along said right of way to a point of intersection with East line of Nome Street, City of Aurora; thence due South to point of beginning."

It unmistakably appears that the city and its attorney had full knowledge of the fact that the land in question was a part of the cemetery involved. That the court was misled is clearly indicated by the following interrogation of the witness Vrooman, by the court at the ex parte hearing, as appears from the transcript of the proceeding:

"The Court: Is that vacant property? A. Yes.

"The Court: No church is located on it? A. No, it is strictly vacant property with this ditch alongside. That is just the way it is, just a piece of raw ground there. The sewer, there is a little more of a problem than the

water. The sewer, the closest place on the sewer is in the alley between Nome and Newark. And the whole sewer line could be run in. The line could be run in all right but it is not there. For the way it is cut up, it would cost at least $150.00, I would estimate, to run the sewer line for each house."

Nothing further is needed to show that the court was not advised that this was cemetery property, dedicated to public use, and it is reasonable to assume that it considered this to be vacant, private property; that negotiations as to acquiring the land, and compensation therefor, had not been agreed upon; when in fact, no negotiations had been attempted for the property described in the petition. We are inclined to think that if the trial court had been fully advised as to the true facts, it would have judicially advised the city of its legal rights, and the erroneous order of immediate' possession would never have been entered.

 The petitioner alleged that it was proceeding under the provisions of paragraph 70 of section 10, chapter 163, '35 C.S.A. and section 2, chapter 61, '35 C.S.A. There is no authority extended to the city in either statute to condemn property dedicated to public use; both statutes relate to private property and the authority given under paragraph 70, supra, to cities and towns for condemnation for private property is regulated by the laws prescribed for the condemnation for real estate, which is clearly and unmistakably set out in section 2, chapter 61, supra.

Counsel for the city now contends, in support of its prayer for immediate possession, and the order entered thereon, that no notice to the owner is required under what is now section 47 of chapter 61, supra, which is the eminent domain statute. This section has no application whatsoever to condemnation proceedings such as is here attempted by a municipality, even though it was trying to condemn private property. Section 47, supra, is, in fact, not a part of the general Eminent Domain Act,

but is a part of a special act of the 1907 Legislature entitled, "An act to facilitate the construction of telegraph, telephone, electric light power and pipe lines, providing the right of eminent domain therefor," etc. S.L. '07, p. 385. It is a special provision for facilitating the obtaining of immediate possession by such companies as are enumerated in the title and the act. Municipalities are not included.

■ ■ Condemnation, even as to private property, can be had only under powers specifically granted by the legislature, or, in some cases, where the power to condemn specific property is provided by home-rule cities to which the legislature has delegated its power in such matters. Such is clearly the majority rule in all jurisdictions, and is manifestly the rule in this jurisdiction according to the recent able pronouncement of our court in the case of *Potashnik v. Public Service Co.,* 126 Colo. 98, 247 P. (2d) 137, announced July 14, 1952, in the following language: "Whatever may have been the ancient right of condemnation, it has been restrained by constitutional limitations in the protection of individual property rights. The power lies dormant in the state until the legislature speaks. * * * The right to condemn private property is therefore a creature of statute, pursuant to which it must clearly appear either by express grant or by necessary implication."

■ ■ "By necessary implication," above mentioned, vague or doubtful language must be excluded. It follows that if there is doubt, then there has been no grant of such power by the state. *Mack v. Town of Craig,* 68 Colo. 337, 191 Pac. 101. The power is specifically and unequivocally granted, or it is withheld. It is clear that the city, the petitioner, has no authority whatever to proceed for immediate possession under section 47, supra, therefore the order granting immediate possession herein, was and is, wholly void.

■ In addition to all of this, in the recent case of *Swift v. Smith,* 119 Colo. 126, 201 P. (2d) 609, it was

clearly determined that such companies as were entitled to proceed under section 47, supra, were not entitled to immediate possession in condemnation proceedings without some notice to the owner or the one in actual possession. This is an unnecessary reference or citation, other than to show the irregularity of the attempted proceedings, when reliance was had upon this section of the statute under which a municipality had no authority to proceed. The entire proceeding here is, in many ways, an abortive attempt at condemnation, and since the property sought to be condemned is not only dedicated to public use, but has been used for sacred purposes by the cemetery association, a more onerous burden would be placed upon the city in its attempt to acquire the property involved by condemnation, namely, because land devoted to one public use cannot be condemned for another inconsistent public use unless legislative authority for such condemnation is granted, either expressly or by necessary implication. The city of Aurora has not been given such authority, and neither can it create such an authority within itself, because it is not a home-rule city. Moreover, if the city had such authority specifically delegated by the legislature, it would have to allege and prove that an exigency existed necessitating the taking of the land in question, and that no other land is available. Here counsel for the city places some reliance upon the case of *Denver v. Commissioners*, 113 Colo. 150, 156 P. (2d) 101, as authority supporting the proposition that property dedicated to a public use may be condemned for another public use. Counsel seems to have overlooked the fact that Denver is a home-rule city and that Article XX of the Colorado Constitution gives Denver ample power, if it so desires, to acquire by condemnation property already devoted to public use; however, the author of the case thus relied upon quotes with approval from *Denver Power & Irrigation Co. v. Denver and Rio Grand Railroad Co.*, 30 Colo. 204, 69 Pac. 568, the following language: "Where, however, land is al-

ready devoted to a public use, it would be wholly unreasonable to permit it to be taken for another public use which would nullify and defeat the one to which it is already devoted, *except* in cases where the overwhelming necessities of the public were such that in order to serve their needs or supply their necessities, the taking of *such property* became necessary."

■ It may readily be granted that in the instant case an emergency or exigency exists for the acquiring of sufficient land for a reservoir by the city, however, it is not shown that it is necessary to take the land in question, nor is it alleged or shown that no other land or site is available. The rule seems to be, without exception, that the right to take property dedicated to a public use for another public use exists in some cases, but such right in special cases must be by specific grant of authority under the eminent domain act. In the case of *Denver Power & Irrigation Co. v. Denver & Rio Grande Railroad Co., supra,* where the question of condemnation, under the eminent domain act, of property already devoted to a public use was sought to be condemned for another public use, we find the following: "No public exigency is shown to exist of a character which demands the location of a reservoir site at the point selected by petitioner. It may be true, that the site thus selected is convenient, or it may even be true that it is the only available one on the stream, but that is a matter which affects the rights of petitioner, and not the public. It is not claimed that in order to serve the needs of any community, it is necessary that the reservoir site be located at this particular point, or, in fact, at any."

Therefore, if Aurora possessed the necessary grant of authority, which it does not have, it would be required to meet the conditions thus imposed by law and by the decisions of this court. All that has been heretofore said concerning the taking of lands dedicated and devoted to public use for another public use under the power of eminent domain, applies with equal force to the taking

of lands held and used by a public cemetery with· the additional sentimental demand that the peace and good order of society, coupled with the quiet and security of the people, is preserved from profanation of the burial places of their dead. As was so aptly said by our late Justice Campbell in the case of *Denver v. Tihen,* 77 Colo. 212, 219, 235 Pac. 777: "Cemeteries are almost universally regarded as a class of property by themselves, but as our people generally, as do people in all civilized states, regard the burying places of the dead as sacred or hallowed ground, this sentiment doubtless contributed largely to the declaration of the public policy." This statement was made, of course, in reference to the question of the exemption from taxation. This age-old sentiment was respected by the framers of our state Constitution in providing that, " * * * cemeteries not used or held for private or corporate profit, shall be exempt from taxation, unless otherwise provided by general law." Article X, section 5, Colorado Constitution. Concerned with the projection of this constitutional provision, our legislature, as early as 1887, provided that such property not only be exempt from taxation, but from assessment, lien, or attachment. Section 232, chapter 41, '35 C.S.A.

It is not to be said that such lands, by virtue of their sacred nature, are placed beyond the reach of the power of eminent domain; however, such power, "in the case of public cemeteries, authority to condemn must be given expressly or by necessary and reasonable implication." 29 C.J.S., page 875, section 85. The leading case on this particular question is *County Board of Commissioners v. Holliday,* 182 S. C. 510, 189 S.E. 885, 109 A.L.R. 1496, note page 1503, which holds that the fact that the part of a cemetery sought to be taken contains no graves, and that remaining part would be adequate for burial purposes does not justify condemnation where whole cemetery tract is devoted to public uses incidental

to burial purposes. In accordance with this logical ruling, it cannot be claimed in the instant case that the plot of ground sought to be condemned through the unauthorized procedure here practiced, could be so acquired because it is an unused portion of the cemetery proper. In cases where proper authority exists for the taking of property dedicated to public use for another public use, especially the attempt to acquire a portion of cemetery property so used, the caution signal to proceed with extreme care exists.

Much of what has been said concerning these questions may rightfully be considered as dictum, because the opinions expressed as to these questions are not necessary to the decision of the exact question before us as stated earlier in this opinion, however, such expressions are made in the hope that they will be helpful in any further presentation of this or any other case which may involve like situations.

In accordance with the views herein expressed, it is ordered that the rule to show cause herein is made absolute in each and every respect.