The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ARAPAHOE, State of Colorado, Petitioner-Appellant,

v.

The INTERMOUNTAIN RURAL ELECTRIC ASSOCIATION, a Colorado Corporation, City of Littleton, Colorado, a Municipal Corporation, City of Englewood, a Colorado Municipal Corporation, United States of America, National Rural Utilities Cooperative Corporation, Colorado Springs National Bank, and Paul W. Wolf, as the Treasurer of Arapahoe County, Colorado, Respondents-Appellees.

No. 81SA120.

Supreme Court of Colorado, En Banc.

Dec. 13, 1982.

Rehearing Denied Jan. 10, 1983.

Fuller & Evans, Clyde A. Faatz, Jr., Larry G. Johnson, Denver, for plaintiff-appellant.

Baker & Hostetler, James A. Clark, Bruce D. Pringle, Denver, for respondent-appellee, Intermountain Rural Elec. Ass'n.

Perry B. Burnett, Denver, for amicus curiae, Colorado Counties, Inc.

Broadhurst & Petrock, J.J. Petrock, Frederick A. Fendel, III, Denver, for amicus curiae, Bd. of County Com'rs of the County of Gilpin.

LEE, Justice.

The appellant, Board of County Commissioners of Arapahoe County (Board), sought to obtain office space to house the district attorney and his staff. The building which the Board selected for this purpose was owned by the appellee, Intermountain Rural Electric Association. When a purchase price could not be negotiated, the Board filed a petition in the district court to condemn the building, pursuant to sections 38–1–101 to –121, C.R.S.1973. The appellee filed a motion to dismiss the action on the ground that the Board lacked authority to exercise the power of eminent domain for the purpose of acquiring appellee's property. After an *in limine* hearing, the trial court dismissed the action holding that the General Assembly had not expressly or impliedly delegated the power of eminent domain to counties for the purpose of acquiring office space for authorized county purposes. The Board of County Commissioners has appealed the ruling, and we affirm.

I.

Counties are charged with the duty to provide public buildings for county offices, and to maintain those buildings. Section 30–11–104, C.R.S.1973; section 30–11–107(1)(c), C.R.S.1973; *Lawson v. Pueblo County,* 36 Colo.App. 370, 540 P.2d 1136 (1975).[1] It is admitted that the above stat-

---

1. Section 30–11–104, C.R.S.1973, provides:

    "**30–11–104. County buildings.** Each county, at its own expense, shall provide a suitable courthouse, a sufficient jail, and other necessary county buildings, and keep them in repair."

    Section 30–11–107(1)(c), C.R.S.1973, provides:

    "**30–11–107. Powers of the board.** (1) The board of county commissioners of each county has power at any meeting:

    . . . .

    "(c) To build and keep in repair county buildings and cause the same to be insured in the name of the county treasurer for the benefit of the county, and in case there are no county buildings, to provide suitable rooms for county purposes."

utes do not expressly grant condemnation powers to the counties for such purposes. The question to be determined, therefore, is whether the counties, by necessary implication, have been granted such power.

It is fundamental that the power of eminent domain is vested in the State of Colorado. Such power may not be exercised by a governmental subdivision or other entity unless the power has been delegated to it by the General Assembly. In *Potashnik v. Public Service Company*, 126 Colo. 98, 101, 247 P.2d 137, 138 (1952), this court stated:

"Whatever may have been the ancient right of condemnation, it has been restrained by constitutional limitations in the protection of individual property rights. The power lies dormant in the state until the legislature speaks. The right to condemn private property is therefore a creature of statute, pursuant to which it must clearly appear either by express grant or by necessary implication." (citations omitted).

Thus, the authority to condemn may be conferred expressly by statute or by necessary implication from the rights, powers, and duties conferred by the legislature. *Town of Eaton v. Bouslog*, 133 Colo. 130, 292 P.2d 343 (1956); *Hagodol v. City of Aurora*, 126 Colo. 267, 248 P.2d 732 (1952); *Public Service Company v. City of Loveland*, 79 Colo. 216, 245 P. 493 (1926); *Mack v. Town of Craig*, 68 Colo. 337, 191 P. 101 (1920); *see generally* 2 *Nichols On Eminent Domain* § 3.21[4] (3d Ed. 1980). However, even though the purpose for which the property is sought to be condemned is a public use within the meaning of *Colo. Const.* art. II, sec. 15, in the absence of express or necessarily implied statutory condemnation authority, private property may not be condemned. *Buck v. District Court*, 199 Colo. 344, 608 P.2d 350 (1980); *Riverside Irrigation District v. Lamont*, 194 Colo. 320, 572 P.2d 151 (1977); *Potashnik v. Public Service Company, supra*.

The Board argues that since the county has a mandatory duty to provide county offices, the power to acquire property to carry out that duty must necessarily be implied. Further, since the purpose of eminent domain relates to a governmental function, the county's authority to invoke the power of eminent domain to fulfill essential, mandatory government functions must be recognized, even if there is no express grant by the legislature. The Board's argument continues that without the power of eminent domain to acquire property for county buildings, a county would be unable to perform its mandated governmental functions. Furthermore, the location of public buildings should be determined by considerations of public access and administrative efficiency, and not by a private landowner's willingness to sell at a fair price.

In ruling against the Board the trial court stated:

"[I]f the statute is silent on the subject [of eminent domain], and the powers given by it can be exercised without resort to condemnation, it is presumed that the legislature intended that the property should be acquired by contract. Thus, the duty of respective County Commissioners to build and keep county buildings in repair, to insure county buildings, to provide suitable rooms, to care for the county property and to manage county business can be [accomplished] without resort to condemnation through normal channels of contracting for the purchase of goods, services and property. In fact, this has been done by the County Commissioners over the years, and no case has been cited nor has this Court's research revealed any instance in which County Commissioners have exercised eminent domain to take office buildings." Slip opinion, p. 3.

The district court noted that although other statutes have expressly delegated to county commissioners the right to condemn properties for roads, section 43–2–112, C.R.S.1973; for airports, section 41–4–101, C.R.S.1973; and for cemetery purposes, section 25–1–659, C.R.S.1973, such an express grant of eminent domain power to provide facilities to house public offices does not appear

in section 30–11–104, C.R.S.1973. The district court thus concluded that the legislature's failure to grant specific authority for such condemnation indicates a legislative judgment that counties are not empowered to invoke eminent domain to acquire property for office space.

In *Mack v. Town of Craig,* 68 Colo. 337, 338–339, 191 P. 101 (1920), this court quoted with approval *Lewis On Eminent Domain* § 371 (3rd Ed.), as follows:

> "The authority to condemn must be expressly given or necessarily implied. The exercise of the power being against common right, it cannot be implied or inferred from vague or doubtful language, but must be given in express terms or by necessary implication. When the right to exercise the power can only be made out by argument and inference, it does not exist.... If the act is silent on the subject, and the powers given by it can be exercised without resort to condemnation, it is presumed that the legislature intended that the property should be acquired by contract."

We agree with this analysis. When space to house county offices is sought, we believe the General Assembly intended that the counties enter the real estate marketplace and acquire the property by contract or lease.

Should the General Assembly determine that a county's powers of eminent domain ought to extend to acquisition of property for office space, it may statutorily so direct. However, considering the historic reluctance to allow condemnation of private property where the authority to exercise the power of eminent domain is neither express nor clearly implied by statute, *Mack v. Town of Craig, supra; Potashnik v. Public Service Company, supra; Eaton v. Bouslog, supra,* we decline to recognize such a power in counties. To do so, in our view, would usurp the authority of the General Assembly which has the sole authority under our constitution to delegate the power of eminent domain.

The judgment of the district court is affirmed.