The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 22, 2018

## 2018COA42

**No. 2017CA0212 CAW Equities v. City of Greenwood Village — Eminent Domain — Private Condemnation — Prior Public Use Doctrine**

In this private condemnation action, a division of the court of appeals concludes, as a matter of first impression, that the prior public use doctrine applies to Colorado Constitution article XVI, section 7, to preclude a private condemnation that would entirely eliminate an existing public use on the property. The division further concludes that Colorado's eminent domain statutes properly clarify and regulate the constitutional right of private condemnation. Finally, the division awards attorney fees to the City of Greenwood Village under section 38-1-122(1), C.R.S. 2017

COLORADO COURT OF APPEALS    **2018COA42**

Court of Appeals No. 17CA0212
Arapahoe County District Court No. 15CV31946
Honorable Charles M. Pratt, Judge

CAW Equities, L.L.C., a Colorado limited liability company,

Plaintiff-Appellant,

v.

City of Greenwood Village, Colorado, a home rule municipality,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE FREYRE
Bernard and Berger, JJ., concur

Announced March 22, 2018

Waas Campbell Rivera Johnson & Velasquez LLP, Darrell G. Waas, Patricia C. Campbell, Denver, Colorado, for Plaintiff-Appellant

Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Thomas J. Ragonetti, Bill E. Kyriagis, Brian J. Connolly, Denver, Colorado; Tonya Haas Davidson, City Attorney, Greenwood Village, Colorado, for Defendant-Appellee

¶ 1     In this private condemnation action under Colorado Constitution article XVI, section 7 (Section 7), we address a novel question — Does the "prior public use" doctrine of eminent domain law apply to private condemnations under Section 7? We answer that question "yes" and affirm the district court's judgment related to that doctrine. We also conclude that while Section 7 is self-executing, it is not limitless. Consistent with numerous Colorado cases, we conclude that this constitutional right, as others, is subject to reasonable legislative regulation.

¶ 2     Petitioner, CAW Equities, L.L.C. (CAW), appeals from the district court's judgment denying its private condemnation of a public trail belonging to respondent, the City of Greenwood Village. CAW contends that the district court erred when it: (1) placed statutory limitations on the constitutional right to private condemnation for water use; (2) determined that CAW needed to make a showing of necessity for the condemned property without first addressing the bad faith issue; (3) required CAW to make a showing of "absolute" necessity; (4) admitted testimony regarding the feasibility of CAW's water plan; and (5) awarded the City attorney fees. Because we conclude that Section 7 may be limited

1

by statute, and that the prior public use doctrine provides an alternate basis to affirm the district court's judgment, we do not address the necessity issue, the bad faith issue, or the admissibility of the feasibility evidence. Moreover, because we affirm the district court's judgment, we also affirm its award of attorney fees.

## I.    Background

¶ 3    CAW is a Colorado limited liability company managed by Robert Lembke and owned and controlled by the Lembke family. CAW sought private condemnation of a public equestrian and pedestrian trail (public trail) that bisects two of its adjacent properties. The public trail runs between the Highline Canal to the north and Long Road to the south. The City owns the public trail from a plat dedication and separate dedication agreement for equestrian and pedestrian use.



This diagram, based on admitted exhibits, is not to scale and is provided for illustrative purposes only.

¶ 4    Several years before this suit was filed, CAW proposed creating a new trail along the southern edge of the Eastern Lembke Tract in exchange for vacating the public trail through its property.  The City expressed interest initially, so Lembke made some improvements to the proposed route.  He offered easements to the City on CAW's property in exchange for the public trail.  The City ultimately

rejected this offer, so Lembke offered to purchase the public trail for $85,300. Without responding to this offer, the City began construction to improve the public trail. Two days after the City placed surveying stakes on the public trail, CAW filed this petition in condemnation under Section 7.

¶ 5 CAW petitioned to condemn the entire public trail to construct a ditch from the Highline Canal to the southern end of its properties. The City opposed CAW's petition in a C.R.C.P. 12(b)(1) motion to dismiss. It argued that CAW brought the condemnation action in bad faith, and that the rights it asserted did not comply with the legislative authority that guided and implemented the constitutional right of private condemnation. The district court granted the City's motion in part, concluding that the eminent domain statutes clarified and implemented the rights and responsibilities of a party seeking to condemn property under Section 7. It deferred the bad faith argument to the hearing on the merits.

¶ 6 At the hearing, CAW presented expert testimony that its proposed water plan was the most efficient and cost-effective means of transporting water from north to south and diverting it to the

eastern and western tracts for irrigation. The City presented contrary expert testimony of numerous alternatives that did not require condemning the entire public trail. The record reflects that the City offered to grant CAW an easement to transport water across the public trail consistent with these alternatives and that CAW rejected that offer.

¶ 7    The district court issued a detailed written order denying CAW's petition. It found that (1) the eminent domain statutes were a proper application of legislative authority to implement and regulate Section 7; (2) CAW was required to show necessity for the proposed condemnation; (3) the proposed water plan failed to comply with the relevant statutes, and that CAW had failed to establish a need to take property already in public use; and (4) CAW's failure to establish the necessity of constructing its proposed ditch rendered any bad faith determination unnecessary. The court then awarded the City attorney fees and costs.

## II.    Private Condemnation Under Section 7

¶ 8    We first address whether the district court erred in concluding that CAW lacked the authority to condemn the public trail. CAW contends that the court imposed unlawful restrictions on its right to

condemn property under Section 7. It argues that Section 7 is self-executing and that a private condemnor need not comply with the eminent domain statutes or show necessity before exercising his or her condemnation right. We disagree, and conclude, consistent with well-settled law pertaining to other constitutional provisions, that the legislature, through the eminent domain statutes, may regulate Section 7 so long as it does not unnecessarily limit or curtail the constitutional right.

### A.    Standard of Review and Applicable Law

¶ 9    We review a district court's judgment in a condemnation action as a mixed question of fact and law. *See Glenelk Ass'n v. Lewis*, 260 P.3d 1117, 1120 (Colo. 2011). "[W]e defer to the trial court's findings of fact unless they are so clearly erroneous as to find no support in the record." *Id.* We review the court's legal conclusions, including questions of constitutional and statutory interpretation, de novo. *Gessler v. Colo. Common Cause*, 2014 CO 44, ¶ 7. When interpreting a statute, "a court's essential task is to determine and give effect to the intent of the legislature." *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 513 (Colo. App. 2006) (quoting *People v. Goodale*, 78 P.3d 1103, 1107 (Colo. 2003)).

To accomplish this task, we must first examine the plain language of the statute itself. *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010). If the language is clear and unambiguous, we must interpret it as written. *Id.*

¶ 10     This case involves a conflict between two rights. On the one hand, the right to own and use property is fundamental and important. *See Akin v. Four Corners Encampment*, 179 P.3d 139, 144 (Colo. App. 2007). On the other hand, water is a "scarce and valuable resource" in Colorado. *Mount Emmons Mining Co. v. Town of Crested Butte*, 40 P.3d 1255, 1257 (Colo. 2002). Consequently, water is carefully managed, including its distribution in ditches, to promote beneficial uses. *See, e.g.*, Colo. Const. art. XVI, § 6 ("Diverting unappropriated water – priority preferred uses"); Colo. Const. art. XVI, § 7 ("Right-of-way for ditches, flumes"); §§ 37-86-101 to -113, C.R.S. 2017 ("Rights-of-way and Ditches"); *Archuleta v. Gomez*, 200 P.3d 333, 341-43 (Colo. 2009).

> Ditches are important to Colorado. They permit a landscape, economy, and history in which fertile valleys prosper. Without them, properties adjacent to or distant from watercourses wither. Colorado is not a riparian state in which only those lands adjacent to the streams and rivers have rights

7

to waters. Rather, as early as the tenure of the territorial legislature, our lawmakers recognized that our arid climate required the creation of a right to appropriate and convey water across the land of another so that lands not immediately proximate to water could be used and developed.

*Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1231-32 (Colo. 2001).

¶ 11     The importance of water distribution in Colorado is expressed in the state constitution, which permits private property to be taken, without the consent of the owner, for "reservoirs, drains, flumes, or ditches on or across the lands of others." Colo. Const. art. II, § 14. It also permits public land to be condemned for rights-of-way, stating as follows:

> All persons and corporations shall have the right-of-way across public, private and corporate lands for the construction of ditches, canals and flumes for the purpose of conveying water for domestic purposes, for the irrigation of agricultural lands, and for mining and manufacturing purposes, and for drainage, upon payment of just compensation.

Colo. Const. art. XVI, § 7.

¶ 12     Section 7 is self-executing, which means that it "shall take immediate effect, and ancillary legislation is not necessary to the

enjoyment of the right thus given, or the enforcement of the duty thus imposed. In short, if a constitutional provision is complete in itself, it executes itself." *Town of Lyons v. City of Longmont*, 54 Colo. 112, 117, 129 P. 198, 200 (1913). Thus, at the time of its adoption in 1876, no further legislative action was required to implement it.

¶ 13    Nevertheless, "[a] provision can still be self-executing even if 'further legislation may clarify or facilitate the execution of the provision.'" *Developmental Pathways v. Ritter*, 178 P.3d 524, 531 (Colo. 2008) (quoting *Davidson v. Sandstrom*, 83 P.3d 648, 658 (Colo. 2004)). Indeed, "although the constitution recognizes the right of eminent domain, it is proper for the legislature to impose just limitations which do not prevent the exercise of the right." *Gibson v. Cann*, 28 Colo. 499, 501, 66 P. 879, 880 (1901); *see also Davidson*, 83 P.3d at 658 n.9 ("Only legislation which 'directly or indirectly limits, curtails or destroys the rights given by those provisions is invalid as violative of the rights reserved by the people to themselves.'" (quoting *Colo. Project-Common Cause v. Anderson*, 178 Colo. 1, 5, 495 P.2d 220, 222 (1972))).

B.     The Eminent Domain Statutes Apply to Section 7

¶ 14     Relying on *Town of Lyons*, CAW argues that Section 7 is self-executing and cannot be limited or curtailed by the eminent domain statutes.  To be sure, our supreme court concluded that the City of Longmont was entitled under Section 7 to condemn a right-of-way through the streets of Lyons for a water pipeline and stated that "[t]he intent of a constitutional provision is the law." *Town of Lyons*, 54 Colo. at 116, 129 P. at 200.  However, it reached this conclusion "independent of statutory provisions" and without considering whether the eminent domain statutes could limit Section 7.  *Id.*

¶ 15     Moreover, it noted that Lyons "retains authority to prescribe all reasonable and necessary rules and regulations which the city of Longmont must observe in maintaining its pipe line . . . and all rights which [Longmont] may exercise over its line within the corporate limits of Lyons are therefore subject to such control." *Id.* at 117, 129 P. at 200.  In our view, this language refutes CAW's argument that Section 7 provides a limitless right and supports the principle that "the manner of exercising the [constitutional] right [may be] regulated by statute." *Downing v. More*, 12 Colo. 316, 318,

20 P. 766, 767-68 (1889); *see also Tripe v. Overacker*, 7 Colo. 72, 73, 1 P. 695, 696 (1883) (holding that the statute limiting the number of ditches that could cross another's land was a proper limitation of Section 7).

¶ 16     More recently, our supreme court explained that "[t]he extent of the right-of-way is defined by section 37-86-103, C.R.S. 1973, and the right of condemnation to acquire the right-of-way is granted by section 37-86-104, C.R.S. 1973." *Application of Bubb*, 200 Colo. 21, 27, 610 P.2d 1343, 1347 (1980).  In doing so, the court recognized that the sources of the right of condemnation are Colorado Constitution article II, section 14, and Section 7.  *Id.* at 27 n.11, 610 P. at 1347 n.11.

¶ 17     We conclude that while Section 7 may be self-executing, it is not without limitation, as suggested by CAW, but may be regulated and implemented by the eminent domain statutes.  Well-settled law recognizes the legislature's ability to "regulate the exercise" of the right of private condemnation, and to hold otherwise would allow private condemnors an unfettered ability to condemn property without any guiding principles, and would leave condemnees and courts with little understanding of the contours of the right.

¶ 18    Accordingly, we make explicit what has been implied in our case law — that the eminent domain statutes properly regulate the exercise of the right of private condemnation under Section 7. *See Passarelli v. Schoettler*, 742 P.2d 867, 870 (Colo. 1987) ("[T]o withstand constitutional challenge statutory provisions must, at a minimum, have a reasonable basis in fact and bear a reasonable relationship to a legitimate governmental interest.").

¶ 19    CAW alternatively argues that even if the eminent domain statutes apply, its proposed plan does not violate them. For the reasons stated below in Part III, discussing the prior public use doctrine, we conclude that CAW did not have the authority to condemn the public trail. Therefore, we need not decide whether the proposed plan complies with the eminent domain statutes.

### III.    Prior Public Use Doctrine

¶ 20    Whether a person claiming a right to condemn property for a ditch must show that the ditch is "necessary" under the constitution is a difficult and unresolved question. CAW claims that Section 7 does not require it to show a ditch is necessary, and that it provides an absolute right to condemn. CAW reasons that because it plans to construct a ditch, as expressly authorized under

Section 7, and because Section 7 contains no language requiring proof of necessity, it need not make such a showing. The City, on the other hand, asserts that CAW must prove that the ditch is necessary to access its water rights in order to condemn a ditch, an argument with which the district court agreed.

¶ 21    However, we need not decide this unsettled question[1] because, as the court found, the land CAW seeks to condemn is already in public use as a public trail. Therefore, we address, as a matter of first impression, whether the prior public use doctrine applies to private condemnation proceedings under Section 7 and conclude that it does. We further conclude that Section 7 does not constitute "express authority" to condemn property in public use, and that the court properly applied this doctrine in finding that CAW failed to (1) allege express authority for its right to condemn all of the public trail; (2) prove that the right to condemn property already in public use was a necessary implication of its private condemnation right;

[1] Colorado law is well established that to condemn a private right of way for ingress or egress, the condemnor must show necessity. *Glenelk Ass'n v. Lewis*, 260 P.3d 1117, 1122 (Colo. 2011). However, whether this same requirement and the definition of "necessary" used in the private right-of-way context apply to irrigation ditch easements is unresolved.

13

and (3) prove that some public exigency existed to justify the necessity of condemning the public trail.

A. Standard of Review and Applicable Law

¶ 22 We review a district court's judgment in a condemnation action as a mixed question of fact and law. *Glenelk Ass'n*, 260 P.3d at 1120. "[W]e defer to the trial court's findings of fact unless they are so clearly erroneous as to find no support in the record." *Id.* We review the court's legal conclusions de novo. *Id.*

¶ 23 Over one hundred years ago, our supreme court considered whether a private company could condemn a piece of land for a reservoir that was being held for railroad use. *See generally Denver Power & Irrigation Co. v. Denver & R.G.R. Co.*, 30 Colo. 204, 69 P. 568 (1902). In discussing article 2, section 14 of the constitution and the prior public use doctrine, the court stated as follows:

> It is unnecessary to attempt an analysis of this constitutional provision, — whether or not it is self-executing, or the legislature has provided laws by which its provisions may be enforced, — further than to say that neither the constitutional provision referred to nor any statute to which our attention has been directed changes or modifies the general rule *that property already devoted to a public use cannot be taken for another in such manner or to such an extent that the use to which it is*

14

> *devoted will be wholly defeated or superseded,*
> *unless the power to so take be granted*
> *expressly or by necessary implication, except it*
> *may be in cases where a public exigency*
> *requires that it be taken.*

*Id.* at 210, 69 P. at 570 (emphasis added) (citations omitted). While the court did not analyze Section 7, it clearly rejected the "self-executing" argument in a similar constitutional provision, under similar circumstances, and found that the prior public use rule could only be defeated expressly, by necessary implication, or by public exigency. *Id.* This prior public use rule has been reiterated in case law and continues to operate in Colorado in cases under Colorado Constitution article II, section 14. *See, e.g., Beth Medrosh Hagodol v. City of Aurora,* 126 Colo. 267, 273-74, 248 P.2d 732, 735 (1952) (noting the prior public use doctrine applies where the city sought to condemn cemetery property for a reservoir); *Town of Parker v. Colo. Div. of Parks & Outdoor Recreation,* 860 P.2d 584, 586 (Colo. App. 1993) ("The right to take property already dedicated to a public use for another public use exists in some cases, but such right must be by specific grant of authority."); *see also* Mark S. Arena, Comment, *The Accommodation of "Occupation" and "Social Utility" in Prior Public Use Jurisprudence,* 137 U. Pa. L. Rev. 233,

234 & n.5 (1988) (collecting cases adopting the prior public use doctrine under various constitutional and statutory provisions).

### B.    Application

¶ 24    CAW does not provide, nor can we discern, any reason to limit the prior public use rule to takings of private property to construct ditches for conveying water under article II, section 14 of the constitution.  Instead, we believe the prior public use rule applies with equal force to the more narrow circumstance of taking property for a right-of-way to construct a water ditch under Section 7.

¶ 25    CAW contends that Section 7 "expressly allows a taking of public property as long as it is for one of the enumerated purposes" and that the prior public use rule does not require otherwise.  It argues that because Section 7 allows a "right-of-way across *public*" lands (emphasis added), it expressly authorizes the condemnation of lands already in public use.  However, this argument misconstrues the scope of Section 7, and it misconstrues the prior public use rule.

¶ 26    First, Section 7 is a narrow provision that allows "persons and corporations" a "right-of-way across public, private, and corporate lands . . . ."  It is not an express provision to condemn entire tracts

of land currently in public use.  *Cf. Minn. Power & Light Co. v. State*, 225 N.W. 164, 165-66 (1929) ("There is a distinction between power merely to cross a railway or other line and authority to construct a railway or line longitudinally upon or through property already devoted to a public use.").  CAW's argument fails to acknowledge how narrowly we must construe the condemnation power, *Town of Parker*, 860 P.2d at 586 ("[N]arrow construction is the rule in determining the scope of the condemnation power delegated."), and how broadly we must construe statutes regulating that power, § 37-86-101, C.R.S. 2017.  Thus, although the language of Section 7 includes a private right to condemn public, private, or corporate-owned property for water rights-of-way, it must be viewed through the broader lens of the eminent domain statutes that regulate it.

¶ 27  To that end, we believe that CAW misconstrues the meaning of "express" authorization.  In *Denver Power & Irrigation Co.*, the court noted that although the petitioner had a general right to condemn properties held for railroad use, "no statute is pointed out which would authorize [petitioner] to take such property to an extent which would *totally deprive the railroad companies of its use.*"  30

17

Colo. at 211, 69 P. at 570 (emphasis added).  We glean from this case that the prior public use doctrine requires express legislative or constitutional authority for a condemnor to entirely extinguish an existing public use, as distinct from the general grant of the power to condemn.

¶ 28     Although Section 7 grants the general authority to condemn public property for a right-of-way to access water, it does not expressly grant the authority to extinguish an existing public use on such property.  *See, e.g.*, *Freeman Gulch Mining Co. v. Kennecott Copper Corp.*, 119 F.2d 16, 20 (10th Cir. 1941) (applying Utah statutes and holding that property devoted to one public use may, under general statutory authority, be taken for another public use, where the taking will not materially impair or interfere with, or is not inconsistent with, the use already existing); *Village of Richmond Heights v. Bd. of Cty. Comm'rs*, 166 N.E.2d 143, 150 (Ohio Ct. App. 1960) ("As a general rule, property already devoted to a public use cannot be taken for another public use which will totally destroy or materially impair or interfere with the former use . . . ."); *In re Vt. Gas Sys., Inc.*, 174 A.3d 1253, 1259 (Vt. 2017) ("[W]e conclude that the prior public use doctrine does not prohibit condemnation of

18

land devoted to a public use when the new use does not materially impair the prior use."); *cf.* Wyo. Stat. Ann. §§ 1-25-813, 1-26-505 (West 2017) (condemnations of property in public use allowed on a showing that the new use will not unreasonably interfere with or impair prior public use). CAW does not cite, nor have we found, any authority granting the unfettered power to condemn that it espouses. *Cf. Town of Parker*, 860 P.2d at 587 (explaining that the "general grant of eminent domain power" of Colorado Constitution article XX, section 1 "confers no specific condemnation powers over state-owned lands" and thus could not justify condemnation); *see also Lake Cty. Parks & Recreation Bd. v. Ind.-Am. Water Co.*, 812 N.E.2d 1118, 1123 (Ind. Ct. App. 2004) ("[A]bsent the prior public use doctrine, property could be condemned back and forth indefinitely.").

¶ 29    Narrowly construing the right to condemn, as we must, we reject CAW's argument that Section 7 expressly authorizes it to extinguish the public trail and instead conclude that Section 7 merely grants express authority to a right-of-way, so long as the right-of-way does not extinguish the prior public use. Consistent with this holding, the district court found that several alternatives

19

to extinguishing the public trail existed and that CAW could obtain a right-of-way to access its water rights without eliminating the existing public use.  Because ample record evidence supports this conclusion, we discern no error.

¶ 30    Additionally, to the extent CAW asserts that its right to condemn land in existing public use arises "by necessary implication" of Section 7, we reject that assertion for the reasons explained above and conclude that the right to condemn an entire tract of public land in public use is not a necessary implication of the general right to privately condemn a right-of-way for a ditch. *See Mack v. Town of Craig*, 68 Colo. 337, 338-39, 191 P. 101, 101 (1920) ("The authority to condemn must be expressly given or necessarily implied.  The exercise of the power being against common right, it cannot be implied or inferred from vague or doubtful language . . . .  When the right to exercise the power can only be made out by argument and inference, it does not exist." (quoting John Lewis, *Law of Eminent Domain* § 371 (3d ed. 1909))); *cf. Bd. of Cty. Comm'rs v. Intermountain Rural Elec. Ass'n*, 655 P.2d 831, 833-34 (Colo. 1982) (concluding that although the county had

a duty to provide county offices, the fact that an individual did not want to sell offices did not necessarily imply the right to condemn).

¶ 31 Where, as here, a private condemnor can obtain a right-of-way without extinguishing the existing public use, the condemnation power does not necessarily imply such a power. *Cf. Bd. of Cty. Comm'rs*, 655 P.2d at 833 (explaining that, when a statute is silent and the power can be exercised "without resort to condemnation," it is presumed the legislature intended the property be acquired without condemnation).

¶ 32 Finally, CAW provided no evidence of a "public exigency" to justify condemning the public trail. Indeed, it failed to show that a ditch over the entire tract was necessary, and it conceded that a ditch on the Eastern Lembke Tract was possible, though not preferable. *See Beth Medrosh Hagodol*, 126 Colo. at 274, 248 P.2d at 736 (finding exigency not established where "it [was] not shown that it [was] necessary to take the land in question, nor [was] it alleged or shown that no other land or site [was] available").

¶ 33 Thus, while CAW's proposed water plan may reflect the most cost-effective and efficient option to achieve its own purposes, it does not reflect the *only* available option, nor does it consider the

21

existing public use. *See Denver Power & Irrigation Co.*, 30 Colo. at 211, 69 P. at 570 ("It may be true that the site thus selected is convenient, or it may even be true that it is the only available one on the stream; but that is a matter which affects the rights of petitioner, and not the public."). Indeed, efficiency and costs relate only to CAW's rights and not the public. *Id.*

¶ 34 The district court concluded that "there are other available means and locations to achieve the goal of conveying or transporting the water without interfering with the public trail which would defeat the use for which it was dedicated to the public." Because ample record evidence supports this finding, the court did not err in so concluding. *See Glenelk Ass'n*, 260 P.3d at 1120 ("[W]e defer to the trial court's findings of fact unless they are so clearly erroneous as to find no support in the record.").

¶ 35 Accordingly, we affirm the court's judgment that CAW lacked the legal authority to condemn the public trail.

IV. Remaining Issues

¶ 36 Having concluded that the district court properly denied CAW's petition for the condemnation of the public trail, we need not decide whether a condemnor needs to establish necessity under

Section 7, whether a finding of bad faith is a necessary predicate to determining necessity, or whether the court abused its discretion in admitting feasibility evidence. *See People v. Lopez*, 2015 COA 45, ¶ 64 (refusing to address issues raised when a narrower decision is reached).

## V. Attorney Fees and Costs

¶ 37    CAW last contends that the district court erred in awarding the City its attorney fees and costs under section 38-1-122(1), C.R.S. 2017. Because we agree that CAW was "not authorized by law to acquire real property or interests therein sought in a condemnation proceeding," *id.*, we affirm the attorney fee judgment.

### A. Standard of Review and Applicable Law

¶ 38    A court may award attorney fees and costs "when authorized by statute or court rule." § 13-16-122(1)(h), C.R.S. 2017; *United Bank of Denver, Nat'l Ass'n v. Colo. State Treasurer*, 797 P.2d 851, 852 (Colo. App. 1990). We review an attorney fee award for an abuse of discretion and will not disturb that award unless it is patently erroneous or unsupported by the evidence. *Hartman v. Freedman*, 197 Colo. 275, 591 P.2d 1318 (1979). Whether a statutory basis for attorney fees exists is a question of law that we

23

review de novo. *US Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 515 (Colo. App. 2009); *Town of Telluride v. San Miguel Valley Corp.*, 197 P.3d 261, 262 (Colo. App. 2008) (reviewing statutes de novo).

¶ 39    Section 38-1-122(1) authorizes an award of attorney fees and costs in condemnation cases:

> If the court finds that a petitioner is not authorized by law to acquire real property or interests therein sought in a condemnation proceeding, it *shall* award reasonable attorney fees, in addition to any other costs assessed, to the property owner who participated in the proceedings.

(Emphasis added.)  Attorney fees and costs, therefore, are recoverable for the successful defense of a private condemnation action.  *See West v. Hinksmon,* 857 P.2d 483, 487 (Colo. App. 1992) (Attorney fees should be allowed in private condemnation action "if it is established that an alternate acceptable route is legally available to the condemnor at the time the action is commenced."); *Billington v. Yust,* 789 P.2d 196, 198 (Colo. App. 1989) (noting the statute provides "for the imposition of attorney fees as part of recoverable costs" in private condemnation action).

## B. Application

¶ 40 CAW does not challenge on appeal the reasonableness of the attorney fees awarded by the district court, but only the court's legal basis for ordering them under section 38-1-122. It contends that the phrase "not authorized by law" "should not be read so broadly as to include every condemnation that does not proceed to a valuation hearing." CAW reasons that the court's interpretation would require condemnors to pay fees and costs in all dismissed cases, irrespective of whether there was any legal basis for filing the condemnation petition.

¶ 41 We agree with CAW that "[u]nlike some attorney fee statutes, [section] 38-1-122(1) does not provide that fees are to be awarded to the 'prevailing party,'" *Wilkenson v. Gaffney*, 981 P.2d 1121, 1123 (Colo. App. 1999), but instead "authorizes the court to award fees to the respondent property owner if the petitioner is not authorized by law to acquire the real property interests sought," *id.*

¶ 42 Because the court acknowledged that CAW could acquire a right-of-way across the public trail, albeit not the one it sought, CAW argues that it was authorized to condemn at least some of the public trail and should not be required to pay attorney fees.

¶ 43    Recall, however, that CAW sought to condemn *all* of the public trail, not an easement across it.  In fact, the record shows that CAW explicitly rejected the City's offer for such an easement.  Therefore, because the only property interest that CAW "therein sought" to condemn under section 38-1-122(1) was the entire public trail, not the easement the court acknowledged it could obtain, we conclude that CAW's petition was not authorized by law, under the prior public use doctrine, and that the district court properly awarded fees and costs to the City under section 38-1-122(1).  *Cf. Wilkinson*, 981 P.2d at 1122 (awarding attorney fees for petitioners' request for utility easement that did not succeed despite succeeding in obtaining a right-of-way).

¶ 44    Alternatively, CAW argues that the fee award should be reduced because it had legal support for its private condemnation action across the public trail.  We construe this argument as one asserting that its petition was not frivolous or vexatious, an argument with which we agree but find irrelevant.  The question here is not whether CAW brought a frivolous, groundless, or vexatious suit.  *See* § 13-17-101, C.R.S. 2017.  Rather, the question is whether the law authorized CAW to bring the suit "to acquire real

property or interests therein sought." § 38-1-122(1). CAW does not dispute that it sought to condemn the entire public trail or that it rejected the City's offer of an easement across the public trail. Because the prior public use doctrine precluded what CAW sought, CAW's petition was not "authorized by law."

¶ 45    We are not persuaded that *Hinksmon* requires a different result. In that case, a division of this court reversed a condemnee's attorney fee award because it concluded that what the condemnor's petition sought — a private right of necessity — was authorized by law, even though the district court found that a less damaging route existed. 857 P.2d at 487. The division remanded the case for further findings to determine the location of the easement. In *Hinksmon*, what the petition sought and what was awarded were the same — a private right of necessity.

¶ 46    In contrast, here, CAW's petition sought condemnation of the entire public trail, not an easement across it. Under these circumstances, CAW's petition was not authorized by law, and we conclude the district court properly awarded the City fees and costs under section 38-1-122(1).

## VI.    Conclusion

¶ 47    The judgment is affirmed.

JUDGE BERNARD and JUDGE BERGER concur.